# WADKINS v. PRODUCERS OIL COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 638.   Argued January 31, 1913.—Decided February 24, 1913.

Where defendant's claim to land formerly part of the public domain is based on his grantor's rights under the statutes governing the disposition thereof, and sustained by the construction given to such statutes by the state court, the decision against the plaintiff involves the denial of a Federal right as asserted by him.

Under §§ 2291, 2292, Rev. Stat., no rights accrue to the wife of an entryman who dies before the entry is perfected, and nothing passes under the inheritance laws of the State in which the land is situated.

Under § 3 of the act of May 14, 1880, providing that settlers might file homestead entries and that their rights should relate back to date of settlement; the inchoate right is initiated by the settlement and the perfected right when evidenced by patent finally obtained relates back to that date, but no vested right is obtained until full compliance with the provisions of the act.

Where a statute of the United States gives definite rights on the happening of certain contingencies, no rights can vest until such contingencies happen, and unless the wife survives the entryman and becomes his widow she acquires no rights to the land; whether the entry was made before or after her marriage to the entryman.

Prior to patent the rights of the entryman are essentially inchoate and exclusively within the operation of the laws of the United States, and where those laws designate the beneficiaries of a compliance therewith, state laws are excluded. *McCune v. Essig*, 199 U. S. 382.

An entryman, prior to marriage, settled on the land but made his entry after marriage; prior to perfection and patent his wife died leaving children; after perfecting and obtaining a patent he sold. *Held* that he perfected the entry in his own right and under §§ 2291, 2293, his wife had acquired no interest therein which descended to her children under the law of the State.

129 Louisiana, 484, affirmed.

THE facts, which involve the construction of the Homestead Entry Law of the United States and the rights of an entryman and of his wife, are stated in the opinion.

*Mr. S. L. Herold,* with whom *Mr. W. P. Hall* and *Mr. J. A. Thigpen* were on the brief, for plaintiff in error.

*Mr. Amos L. Beaty* for defendants in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

Action brought in the First Judicial District Court of Louisiana, in and for the Parish of Caddo, by plaintiff in error (and as he was plaintiff below we shall so call him) against the defendants in error (herein referred to as defendants) for the recognition of Effie Bell Wadkins, represented by him as her natural tutor, as owner of an undivided one-half interest in and to the S. E. ¼ of section 3, township 20 North, range 16 West, Caddo Parish, Louisiana, and to put her in possession thereof, and to require the defendants to pay for all the oil and other minerals extracted therefrom, and, as tutor of said minor, to have judgment against them *in solido* for market value of one-half of all oil, gas and other minerals that have been produced up to date and which may be produced.

Judgment was entered recognizing the minor as the owner of an undivided one-half interest in the land, as prayed, and for $86,328.24, the value of the oil extracted therefrom, with interest and costs. The right of the minor to a further accounting was also reserved. The judgment was reversed by the Supreme Court of the State. 129 Louisiana, 484.

The question in the case is whether a homestead entry made by the father of the minor is community property, her mother having died before the perfection of the entry.

The facts, as taken from the opinion of the Supreme Court, are as follows: In June, 1893, W. H. Wadkins, father of Effie, the minor, settled on the land with the view of acquiring it as a homestead. On February 25, 1895, he made application for and obtained a preliminary homestead entry at the proper local land office. At the end of five years, to wit, on September 8, 1898, he made final proof and secured a final homestead entry, upon which he subsequently obtained a patent.

Wadkins married the mother of the minor on June 24, 1894; she died December 5, 1896. Two children were born of this marriage, one of whom died at the age of two years; the other is the plaintiff.

The defendants are oil and gas companies operating in the Caddo oil and gas fields, the Producers Oil Company operating under a lease from the other company. The property has produced and is still producing a large amount of oil.

A motion is made to dismiss. As pertinent to the motion the answer of the Producers Oil Company must be considered. It alleges that Wadkins actually settled upon the land on or before December 12, 1893, under the homestead laws of the United States, the land then being public land of the United States and subject to settlement and entry under those laws, and did not marry the mother of plaintiff until several months later; that the patent was issued as early as December 12, 1898, thereby fixing and determining the date of settlement as being at least five years prior thereto; that defendant is the lessee of its co-defendant, who claims to own and does own the land in fee simple by regular conveyance from Wadkins, and that defendant, therefore, claims a right, title, privilege and immunity under the statutes of the United States, and particularly under the acts of Congress governing homestead entries on the public lands of the United States, and that under those statutes plaintiff has no right, title or interest in the lands.

The answer of the Atlanta & Shreveport Oil and Gas Company alleges substantially the same facts and that "all allegations of its co-defendant as to Federal questions are adopted and made part" of defendant's answer.

It will appear in our discussion of the case that the Federal right thus invoked was passed on by the Supreme Court of the State and was an element in its decision against plaintiff. The motion to dismiss is therefore overruled.

Under the laws of the United States every person who is the head of a family, and having certain other qualifications not necessary to mention, shall be entitled to enter a quarter-section or less of the public lands.

By §§ 2291 and 2292 of the Revised Statutes it is provided as follows:

"SEC. 2291. No certificate, however, shall be given, or patent issued therefor, until the expiration of five years from the date of such entry; and if at the expiration of such time, or at any time within two years thereafter, the person making such entry; or, if he be dead, his widow; or, in case of her death, his heirs or devisee; or in case of a widow making such entry, her heirs or devisee, in case of her death, proves by two creditable witnesses that he, she, or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of such land had been alienated, except as provided in section twenty-two hundred and eighty-eight, and that he, she, or they will bear true allegiance to the Government of the United States; then, in such case, he, she, or they, if at that time citizens of the United States, shall be entitled to a patent as in other cases provided by law. . . .

"SEC. 2292. . . . In case of the death of both father and mother, leaving an infant child or children under twenty-one years of age, the right and fee shall inure to the benefit of such infant child or children. . . ."

In *McCune* v. *Essig,* 199 U. S. 382, we decided that the beneficiaries of the statute were (1) the entryman, (2) his widow, she performing and proving the performance of the conditions, to-wit, residence and cultivation of the land for the time prescribed; and (3)—§ 2292—a child or children under 21 years of age. And the rights are independent; or, in other words and in illustration, as we said in *McCune* v. *Essig* (p. 389), the homestead claimant "may reside upon and cultivate the land, and by doing so

is entitled to a patent. If he die his widow is given the right of residence and cultivation, and 'shall be entitled to a patent as in other cases.' He can make no devolution of the land against her. The statute which gives him a right gives her a right. She is as much a beneficiary of the statute as he."

Her rights therefore are derived from the statute but necessarily depend upon the contingency mentioned, that is, his death before perfecting his entry. If she die before then, if she does not become a widow before then, necessarily no right vests in her under the statute. And such was the fact in the case at bar. The mother of the minor died before any right could accrue to her. To express it another way, the entry of Wadkins was perfected in his own right.

But it is said that his right has relation to the date of his entry and must be considered as having vested then. A like contention was rejected in *McCune* v. *Essig.* A title derived from a widow was there sustained against the contention that by the entry of her husband the land involved had become community property under the state law and an undivided one-half thereof passed at his death to his daughter. The ruling is directly in point.

It appears that Wadkins settled on the land before his marriage but did not make a formal homestead entry of it until after his marriage, and it is hence argued that an inchoate right vested in him by his entry only; and that the entry having been made "during the regime of the community of acquets and gains incidental to the marriage," the patent under the jurisprudence of Louisiana conveyed the "full title of the Government to the community." And this, it is contended, the Supreme Court decided to be the law of the State but considered that it could not be applied in the case at bar because the court erroneously decided that Wadkins' settlement, which occurred before his marriage, was the commencement of

his right, and not the entry at the land office, which occurred after his marriage.

The court did decide that the right of Wadkins began with his settlement and not by his entry and applied the law of the State in accordance with that view, yielding to it, as the court said, "as an effect of the act of Congress of 1880" and of the codal provisions of the State "touching the retrospective operation of the accomplishment of suspensive conditions."

The provision of the act of May 14, 1880 referred to is as follows: "Sec. 3. That any settler who has settled, or who shall hereafter settle, on any of the public lands of the United States, whether surveyed or unsurveyed, with the intention of claiming the same under the homestead laws, shall be allowed the same time to file his homestead application and perfect his original entry in the United States land office as is now allowed to settlers under the preëmption laws to put their claims on record, *and his right shall relate back to the date of settlement, the same as if he settled under the preëmption laws.*" (Italics ours) 21 Stat. 140, c. 89.

The Supreme Court, to sustain its view, cited *Maddox v. Burnham,* 156 U. S. 544; *St. Paul, Minneapolis & Man. Ry. Co. v. Donohue,* 210 U. S. 21.

In *Sturr v. Beck,* 133 U. S. 541, 547, the court said, through Chief Justice Fuller, that "the ruling of the Land Department has been that if the homestead settler shall fully comply with the law as to continuous residence and cultivation, the settlement defeats all claims intervening between its date and the date of filing his homestead entry, and in making final proof his five years of residence and cultivation will commence from the date of actual settlement."

In *Maddox v. Burnham,* the act of 1880 was commented on and it was decided (p. 547) that by that act "for the first time the right of a party entering land under the

homestead law was made to relate back to the time of settlement."

In *St. P., Minn. & Man. Ry. Co.* v. *Donohue*, 210 U. S. 30, it was held it was not until May 14, 1880, that a homestead entry was permitted to be made upon unsurveyed public lands and "for the first time, both as to the surveyed and unsurveyed public lands, the right of the homestead settler was allowed to be initiated by and to arise from the act of settlement, and not from the record of the claim made in the Land Office." 21 Stat. 140.

There can be no doubt that Wadkins' inchoate right was initiated by his settlement and that as between him and any intervening claimant his perfected right evidenced by the patent related back to the time of his settlement, (*Shepley* v. *Cowan*, 91 U. S. 330, 338; *Weyerhaeuser* v. *Hoyt*, 219 U. S. 380, 388–390), but he did not acquire any vested interest in the land until he had fully complied with the provisions of the homestead law and submitted proof thereof at the local office. Prior to that time his right was essentially inchoate and exclusively within the operation of the laws of the United States, and those laws, as we have seen, fully dealt with the subject of who should be the beneficiary of a compliance with them, thereby excluding state laws from that field. This is a manifest deduction from *McCune* v. *Essig*. There might be a curious and confusing result from an opposite ruling, as pointed out by the Supreme Court of the State in its first opinion. Suppose Wadkins had married again and died before perfecting his claim. Could his widow have continued the required residence upon and cultivation of the land? And if so, in what right—her own, or that of the first wife, or in both rights? Section 2291 precludes such confusion. It is a definite grant of rights, and who shall be its beneficiaries are explicitly designated and upon what contingencies and upon the performance of what conditions. Until such contingencies happen and until

such performance no rights vest. It follows that the mother of Effie Bell Wadkins acquired no interest in the land.

*Judgment affirmed.*