### SUN OIL CO. v. BLEVINS et al.
#### No. 79.

District Court, W. D. Louisiana, Shreveport Division.

Aug. 30, 1939.

902

T. L. Foster, of Dallas, Tex., and Wise, Randolph, Rendall & Freyer, of Shreveport, La., for plaintiff.

R. B. Sadler, Jr., of Alexandria, La., curator.

Clement M. Moss, of Lake Charles, La., Gill & Simon, of New Orleans, La., and Breazeale & Sachse, of Baton Rouge, La., for defendants.

DAWKINS, District Judge.

Plaintiff filed this action under what is known to the Louisiana practice as a slander of title or jactitation suit, in which it is charged that the several defendants had "individually and jointly slandered the title and rights of petitioner herein and placed a cloud thereon * * *" by claiming rights thereto, and specially by the execution and recordings in the records of Avoyelles Parish, where the property is situated, some four documents consisting (1) of a power of attorney to the defendant J. E. Blevins by the other defendants, who claim an undivided interest in the lands, (2) a contract between Blevins and certain of the other defendants, (3) a mineral lease covering, among others, the lands in question, by the other defendants to Blevins, and (4) an assignment by Blevins to one D. M. Freeman of this said mineral lease. Plaintiff prayed in accordance with the Louisiana law, that the defendants be ordered to "appear and make answer as required by law * * * and either to disclaim any title whatsoever or interest in the property herein above described" in which event the said instruments should be cancelled and erased from the records, or "that defendants and each of them be ordered to assert and set forth herein all rights, titles, claims or interests they may have in and to said property * * * and for judgment in the sum of $25,000.00, attorneys' fees, and an additional sum of $2,500.00, costs and expenses * * *."

Defendants answered, admitting the corporate status and citizenship of plaintiff as well as of themselves, and that the amount in controversy exceeds the minimum jurisdiction of this Court. They further admitted that the plaintiff was the owner of a mineral lease covering the property in question, except as to a one-half interest claimed by defendants; that the lands were located within the jurisdiction of this Court, that the plaintiff had been in possession for more than one year and was drilling a well thereon, but denied that the possession was "as owner", in so far as an undivided one-half interest in the property was concerned, which they claimed.

Further, defendant, Elizabeth Powell, widow of Wilbur Branch Lyles, and mother of most of the other defendants (grandmother of one), in the same answer disclaimed "any title to said property." The other defendants admitted that they were claiming rights in said property and that they had executed and recorded the documents referred to in the petition, but denied the same constituted such slander or "placed any cloud" on the rights of plaintiff.

The remaining articles of the petition (10, 11, 12, 13) involve mainly legal conclusions, such as that the slander had been committed "without warrant of law and placed a cloud" upon plaintiff's title, were denied, as was the last (14) that the plaintiff had been damaged in the manner and the amounts claimed in the prayer above mentioned.

The answer then averred that as to all of the defendants "except the said Mrs. Sarah Elizabeth Powell, widow of Wilbur Branch Lyles * * *," they are the true owners of an undivided one-half interest in the lands in question.

For the purpose of the matter now to be considered, the allegations of the answer demanding affirmative relief are as follows:

XV. Further answering the complaint, defendants (which designation hereinafter shall refer to all defendants cited herein except the said Mrs. Sarah Elizabeth Powell, widow of Wilbur B. Lyles) allege that they are the true owners of the following described property in Avoyelles Parish, Louisiana, to-wit:

An undivided one-half interest in:

A certain tract of land being the west half of a certain tract of land formerly a part of the R. D. Winds Plantation which was purchased by S. H. Kelly and J. D.

Bell from Percy Saint lying and being in Avoyelles Parish, Louisiana, together with all the buildings and improvements thereon and all rights, ways, and privileges thereto belonging. The said tract containing an aggregate of Three Hundred and Eight and One-Half acres of which One Hundred and Twenty-two acres are woodland. Bounded on the North by public road; East by a tract this day sold to M. S. Hatfield; South by Mrs. Wimple; and West by Mrs. Wimple. Being further described as lot number 1 of a map and survey made by F. S. Robert and attached to a sale passed this day to M. S. Hatfield. See A–13—541.

XVI. Defendants allege that they acquired said property in the following manner, to-wit:

(a) Wilbur Branch Lyles, formerly a resident of Avoyelles Parish, Louisiana, died on October 24, 1918, leaving as his sole and only heirs, issue of his marriage with Sarah Elizabeth Powell, the following defendants:

Lois Lyles Huckabay, Marguerite Lyles Thompson, Helen Lyles Adcock, Fannie Mae Lyles, Montez Lyles Lindsly, Vesta Lyles Wells, Wilbur Lyles, Charner Lyles, and Mrs. Clyde Lyles Magoon, the latter having since died leaving Henry Magoon, a minor, as her sole and only heir.

(b) That, on December 9, 1913, the succession of the said Wilbur Branch Lyles was formally opened in Avoyelles Parish, Louisiana, by a petition filed by his widow, Sarah Elizabeth Powell Lyles, in the then Fourteenth Judicial District Court, whereby his widow asked that an inventory of his estate be taken and that she be confirmed as Natural Tutrix of their minor children, said petition reciting, in part, as follows, to-wit:

"That at the time of his death, the said Wilbur Branch Lyles owned in community with your said petitioner certain property divided and in partnership with one J. D. Bell of the Parish of St. Mary, State of Louisiana."

that said Court ordered the taking of said inventory, and that said petition and order were filed in the Probate, Petition and Will Book O, folio 560 of the public records of Avoyelles Parish, Louisiana, all of which will more fully appear by reference to a certified copy of said petition and order annexed thereto, as Exhibit A, and made a part hereof.

(c) That, on December 8, 1918, pursuant to said petition and order of court, and a commission issued thereunder, an inventory of the property belonging to the succession of the said Wilbur Branch Lyles was taken by Alfred E. Gremillion, Notary Public duly commissioned and qualified in and for Avoyelles Parish, Louisiana, assisted by Ulysses Roy and A. V. Saucier, sworn appraisers, and described, with other property, the following property, as quoted therefrom, to-wit:

"Community Property Between Deceased and His Wife Sarah Elizabeth Powell

"Art. 1. The undivided one half interest in and to the following described property, owned in partnership by and between John D. Bell and Wilbur B. Lyles, Viz.:

"A. A certain tract or parcel of land lying and situated on Water Melon Bayou in the Parish of Avoyelles, being the E½ of the NW¼, NE¼ of SE¼, Section Eight, West Half of West Half Section Nine and NE¼ Sec. 11, all in Township 2 S. R. 3 East, containing Seven Hundred and Twenty (720) acres more or less, bounded on the North by property of Henry Frith and John Snelling, East by lane, between said property and Jackson, and West by tract in part of Snelling, South by the Star Plantation of S. H. Kelley and in part by Sixteenth Section and West by the Star Plantation and property of Mrs. E. L. Matthews, with all the buildings and improvements thereon from which is to be deducted that portion of the NE¼ of NW¼ Section 8, Township 2 South Range, Three East, which lies North of Water Melon Bayou, and containing Fifteen and 63/100 acres, bounded North by property of Henry Frith, East by property of Kelley and Bell formerly a part of the Windes Place, South by Water Melon Bayou, and West by vendor, formerly part of the Matthews Tract of the R. D. Windes property, the 15.63 acres not being included in this inventory.

"B. That certain tract on Water Melon Bayou in Avoyelles Parish, formerly being part of the Windes place, being the West Half of West Half of Section Five, and West Half of NW¼ of Section Eight, all in T 2 S R 3 E, containing 240 acres, more or less, bounded North by property of Henry Frith and Morrison, East by property of Henry Frith and Windes tract, South by the Star Plantation and by property of Morrison, Milburn, Rasch, Owen, and parties, unknown, together with the buildings and improvements thereon, both the above described tracts being appraised together at the sum of Eight Thousand Dollars, $8,000.00.

"Deed to the above interest in the said property not having yet been executed but the right of the community of which the deceased was the head is recognized therein"; that the said commission and inventory were filed on December 10, 1918 in Inventory Book M, folio 210 of the public records of Avoyelles Parish, Louisiana, all of which will more fully appear by reference to a certified copy of said commission and inventory annexed hereto, as Exhibit B, and made a part hereof.

(d) That, on December 9, 1918, the said Sarah Elizabeth Powell, widow of Wilbur Branch Lyles, filed another petition in said succession proceeding alleging that said inventory had been taken and recorded, asked that she be confirmed as Natural Tutrix of her minor children and alleged, in part, as follows, to-wit:

"Your petitioner further represents that as surviving widow of the said deceased with whom there was and existed the community of acquets and gains, it is desired that she be recognized as widow in community with full and complete power and authority to take charge and possession of all the property and assets which belongs to the said community between the said Wilbur Branch Lyles and your said petitioner at the time of his death. That as said widow she is entitled to the usufruct of the said property. In addition to her aforesaid right your petitioner as Natural Tutrix, desires to have the administration and control of the said succession property in her said capacity. Shows that her said husband was in a planting partnership with Mr. J. D. Bell, and the said partnership had cane, corn, cotton, and other farm products in process of being harvested and marketed; that she desires in her capacity aforesaid to continue with the marketing and harvesting of the said partnership crop until completed."

That she annexed to her said petition a certificate of the Clerk of Court and Ex-Officio Recorder of Avoyelles Parish, Louisiana, showing that a certificate of extract of said inventory was filed and recorded in the Mortgage Records of said parish; that the Court rendered and signed an order confirming her as Natural Tutrix of said minors and granting her full power of administration of said property, and placing her in possession of said property as the widow in community and as usufructuary, and authorizing and directing her as Natural Tutrix and surviving widow in community to liquidate and settle the said partnership of which the deceased was a member, a portion of said order of court reading as follows, to-wit:

"It is further ordered that said Natural Tutrix as such have full power of administration of the said property of the succession of the deceased, and that letters of Natural-Tutrixship with the said power of administration accordingly be issued to her.

"It is ordered that Sarah E. Powell, as surviving widow in community of the said Wilbur Branch Lyles be recognized as such and she is hereby placed in possession of the said property as widow in community with full recognition of her right of usufruct over the entire estate of the said Lyles as inventoried, the same being community property. The said Natural Tutrix and surviving widow in community as usufructuary being recognized in her right as aforesaid to take possession and control of the entire property of the said succession; collect and draw any and all amounts due to the said deceased or his succession, receipt for the same and proceed together with the partner of the said deceased in the harvesting, marketing, sale and collection of the products and produce of the said partnership existing wherein the said deceased was a member.

"The said widow and Natural Tutrix having power and authority to do and perform any and all collections as fully and completely as if performed by said deceased."

that said petition, certificate and order of court were recorded in the Probate, Petition and Will Book O, Folio 561 of the public records of Avoyelles Parish, Louisiana, all of which will more fully appear by reference to a certified copy of said petition, certificate and order of court annexed hereto, as Exhibit C, and made a part hereof.

(e) That said judgment, placing said widow and Natural Tutrix in possession of said property, was recorded in the usual and customary record kept by the Clerk and Ex-Officio Recorder of Avoyelles Parish, Louisiana, for the purpose of recording judgments rendered in succession proceedings.

(f) That said certificate or extract of inventory was filed and recorded on December 10, 1918 in Mortgage Book 86, at Page 556 of the public records of Avoyelles Parish, Louisiana, to secure the rights of said minors and preserve the legal mortgage granted to them on all of the property of their Natural Tutrix, and also to secure the heirs

of the deceased and preserve the legal mortgage granted to them in cases where a surviving widow is given full power of administration of property of a succession, all in the form and manner required and directed by law.

(g) That the partnership referred to in said proceedings was a planting partnership formed by John D. Bell and Wilbur Branch Lyles during the fall of 1917, whereby the said Lyles agreed to move upon the property described in the said inventory during the first part of 1918, manage the said plantation, known as the K. B. Plantation, or Windes Place, plant and raise corn, cane, cotton and other crops thereon, and to improve the same by construction of dwellings, barn, fences, etc., and whereby the said Bell agreed to pay Lyles a salary for his time and to sell to Lyles a one-half interest in said entire plantation for the sum of $9,000, with six per cent interest thereon from date of the partnership until paid; that each agreed to contribute his mules, wagons, implements, etc., to the partnership.

(h) That, pursuant to said partnership agreement, the said parties proceeded with their planting partnership accordingly, but the said Lyles died before the 1918 crops were fully harvested and sold, as set forth above.

(i) That, although no deed was executed and delivered by said Bell to said Lyles before the death of the latter, the equitable title thereto vested in the said Lyles before his death and he was entitled to receive a deed therefor.

(j) That in liquidation and settlement of said partnership, which was dissolved by the death of the said Wilbur B. Lyles, and pursuant to the said order of court authorizing and directing his widow and Natural Tutrix of the said minors to liquidate and settle the same, the said Bell rendered an accounting of said partnership to said widow and Natural Tutrix and, on February 8, 1919, the said Bell executed and delivered an act of sale, naming as grantee "Mrs. Sarah Elizabeth Lyles, widow of Wilbur B. Lyles", describing the entirety of a specific one-half of the said K. B. Plantation, also known as the Windes Place or Plantation, the property described in said act being the entirety of the same land described in Paragraph XV of this answer; that at the same time, the said Bell sold the remainder of said plantation, being the entirety of the other one-half thereof, to Martin S. Hatfield; said act of sale from said Bell to said Mrs. Lyles was filed for record on March 1, 1919 and recorded in Conveyance Book A-15, folio 449, entry No. 27841, of the public records of Avoyelles Parish, Louisiana, and said act of sale from said Bell to said Hatfield was filed for record on March 1, 1919, and recorded in Conveyance Book A-13, folio 541–3, entry No. 27840 of the public records of Avoyelles Parish, Louisiana; all of which will more fully appear by reference to the statement of said accounting and certified copies of said acts annexed hereto, as Exhibits D, E, and F, respectively, and made a part hereof.

(k) That, although said act from said Bell to said Mrs. Lyles described the grantee as "Mrs. Sarah Elizabeth Lyles, widow Wilbur B. Lyles", it was delivered to her by said Bell, and was accepted by her, on behalf of the succession of Wilbur Branch Lyles, and for the benefit of herself as surviving widow in community and as usufructuary, and on behalf of and for the benefit of the aforesaid heirs of said Lyles, eight of whom were then minors, legally represented by her as Natural Tutrix, all of which was done in settlement of said partnership as aforesaid and was based upon community funds and credits arising from and directly connected with said planting partnership.

(1) That the said heirs of Wilbur Branch Lyles have not sold their undivided one-half interest in said property, or any part thereof, and have not been divested of their ownership therein.

XVII. That the said Mrs. Lyles did not acquire, and could not legally acquire, any interest therein adverse to the said heirs of Wilbur Branch Lyles, and was legally and equitably estopped to acquire any interest adverse to said heirs or to claim or assert any interest therein adverse to the one-half acquired by said heirs, and any party acquiring, claiming or holding under the said Mrs. Lyles, including the Sun Oil Company herein, is likewise legally and equitably estopped therefrom, which estoppel is especially plead herein in bar of any such acquisition, claim or assertation of title adverse to said heirs.

XVIII. That, when the said Mrs. Lyles purported to sell said property to Ellis A. Townsend on January 6, 1934, she owned only an undivided one-half interest therein in her individual capacity and the other undivided one-half interest thereof was owned by the said heirs; that the said Ellis A. Townsend was charged with knowledge thereof by virtue of the recorded proceed-

ings, legal mortgages, and other acts and instruments referred to in Paragraph XVI of this answer, and was bound thereby, and accepted said deed from Mrs. Lyles subject to all of her obligations and to the rights of said heirs, and said deed, therefore, conveyed only the undivided one-half interest owned by the said Mrs. Lyles therein.

XIX. That, when the said Ellis A. Townsend purported to lease the whole of said property to J. C. Vaughan for oil, gas or other mineral development, the said Townsend owned only an undivided one-half interest therein and the other undivided one-half thereof was owned by said heirs; that the said J. C. Vaughan was charged with knowledge thereof by virtue of the recorded proceedings, legal mortgages, and other acts and instruments referred to in Paragraph XVI of this answer, and was bound thereby, and accepted said lease subject to all obligations of the said Mrs. Lyles and to the rights of said heirs, and said lease, therefore, affected only the undivided one-half interest owned therein by the said Townsend.

XX. That, when the said J. C. Vaughan purported to assign the said mineral lease to the Sun Oil Company, the said J. C. Vaughan owned a lease effective only on an undivided one-half interest in said land and the other undivided one-half interest in said lands was owned by said heirs then free of any lease; that the Sun Oil Company was charged with knowledge thereof by virtue of the recorded proceedings, legal mortgages, and other acts and instruments referred to in Paragraph XVI of this answer, and was bound thereby, and accepted the assignment of said lease subject to all of the obligations of the said Mrs. Lyles and to the rights of said heirs, and said assignment, therefore, affected only the undivided one-half interest owned therein by the said Townsend.

XXI. Defendant J. E. Blevins disclaims any right or title to the undivided one-half interest in said land acquired by said Townsend from the said Mrs. Lyles, but defendants allege that the said Blevins acquired a valid oil, gas and mineral lease on said land effective on the other undivided one-half interest in said land that is owned by the said heirs of Wilbur Branch Lyles by virtue of the mineral lease executed and delivered to him by said heirs on February 23, 1939 and recorded on February 24, 1939, referred to in paragraph 9c of the complaint filed herein, all of which will be more fully shown on the trial thereof.

XXII. Defendant D. D. Feldman disclaims any right or title to the undivided one-half interest in said land acquired by said Townsend from the said Mrs. Lyles, but defendants allege that the said Feldman acquired a valid oil, gas, and mineral lease on said land effective on the other undivided one-half interest in said land that is owned by the said heirs of Wilbur Branch Lyles, by virtue of the assignment of the lease referred to in Paragraph XXI of this answer, which assignment was executed and delivered to the said Feldman by the said Blevins on March 3, 1939 and recorded on March 3, 1939, and was referred to in Paragraph 9d of the complaint filed herein, all of which will be more fully shown on the trial hereof.

XXIII. That the said J. E. Blevins is entitled to be recognized as the owner of the overriding royalty interest in said land described hereinafter, and the said D. D. Feldman is entitled to be recognized as the owner of the mineral lease as described and to the extent referred to in Paragraphs XXI and XXII of this answer, subject to the overriding royalty interest claimed by the said Blevins, which said overriding royalty interest was reserved by the said Blevins in his assignment to the said Feldman in words and figures as follows, to-wit:

"Assignor reserves and excepts from this assignment an overriding royalty the equivalent of $\frac{1}{32}$ of $\frac{7}{8}$ of the total oil, gas, or other minerals produced, saved and sold from the land covered by the above described oil, gas and mineral lease, under the terms thereof, free and clear of all costs and expenses of development and production, to be received by Assignor subject to the same terms, conditions and provisions provided in the above described oil, gas and mineral lease with reference to the payment of the landowners' royalty. Such reserved overriding royalty interest shall be increased to $\frac{1}{16}$ of $\frac{7}{8}$ of the total oil, gas or other minerals produced, saved and sold from the land covered by the above described oil, gas and mineral lease, under the terms thereof, if and when net proceeds of Assignee's part of other minerals, after deducting this overriding royalty shall have paid him the sum of Fifty Thousand Dollars ($50,000) after deducting from the gross proceeds of Assignee's part of such production all taxes, but no other expenses, to arrive at such net proceeds. It is the intention of this reservation to provide that the As-

signor shall be entitled to and shall receive out of the leasehold estate and subject to all the terms and provisions of the above referred to oil, gas and mineral lease, an overriding royalty free and clear of all the expense of development and operation, consisting of ⅟₃₂ of ⅞ of the total oil, gas, or other minerals produced, saved and sold from the above described tract of land until the proceeds of Assignee's portion of the production shall equal the sum of Fifty Thousand Dollars ($50,000) such overriding royalty to be increased thereafter to ⅟₁₆ of ⅞ of the total oil, gas or other minerals produced, saved and sold from such land. Nothing in this provision shall be construed to obligate the Assignee to validate the above described oil, gas, and mineral lease by the payment of rentals or by drilling operations thereon, Assignor's rights being limited to such overriding royalty from production under the terms of such oil, gas, and mineral lease so long as the same may continue to be valid. In the event the Lessors in and to the above described oil, gas and mineral lease own less than the entire fee simple estate, the overriding royalty above retained shall be proportionately reduced."

Defendants prayed that the said heirs of Wilbur Branch Lyles be recognized as owners in equal indivision, of an undivided one-half interest in the lands, and that D. D. Feldman be recognized as the owner of the oil, gas and mineral rights described in paragraphs XXII and XXIII of this answer "subject to the overriding royalty rights of Blevins", and that defendants be placed in possession of the property and rights owned by them. Finally the prayer was as follows:

"Defendants further pray that the instruments recorded in Avoyelles Parish, Louisiana, described in Paragraphs 4 and 6 of the complaint filed herein, be declared to have no force and effect upon the property and rights claimed by defendants herein and that, to the extent of defendants' ownership, therein, they be ordered cancelled and erased from the records of Avoyelles Parish, Louisiana."

Attached to and made part of the answer are the following:

1. (Exhibit A)—Certified copy of petition of Sarah Elizabeth Powell, "widow of Wilbur Branch Lyles", addressed to the State Probate Court for Avoyelles Parish, reciting her marriage to him in 1896 and naming his surviving heirs, issue of the marriage, as "Lois, Margaret, Clyde, Helen, Fannie May, Homie, Vesto, Wilbert and Charner, all of whom, the first excepted, being minors" and further reciting that at the death of her said husband in the month of October, 1918, there was "owned in community with this said petitioner certain property divided and in partnership with one J. D. Bell of the Parish of St. Mary, State of Louisiana". This petition prayed that an inventory be made of the property and the effects of the succession, and that Mrs. Lyles be appointed and confirmed Natural Tutrix of her said minor children. An order thereon, dated December 9, 1918 directed to A. E. Gremillion, Notary Public, was entered for the taking of an inventory.

2. (Exhibit B)—Notice by the Clerk of Court, addressed to Gremillion directing him to make the inventory as ordered, with oath attached, which appears to have been executed by the two appointees, as contemplated by State law, a process verbal of the Notary setting forth, in detail, the property inventoried and including, among other property, that involved here referred to and described as follows:

"Community Property Between Deceased and His Wife, Sarah Elizabeth Powell.

"Art. 1 The undivided one half interest in and to the following described property, owned in partnership by and between John D. Bell and Wilbur B. Lyles, Viz.:"

(The description of the property in this instance is identical with that quoted from the answer under the same heading above and will not be repeated.)

3. (Exhibit C)—Final petition of the said Mrs. Lyles reciting that the inventory had been made, giving the interest of the minors in the defendants' estate and praying that she be appointed and confirmed as Natural Tutrix, with an order of the State Court upon said petition appointing and confirming her accordingly, and sending her into possession, both as tutrix and widow in community "with full recognition of her rights over the entire estate." As a part of this exhibit there also appears a certificate or extract of the inventory signed by the Clerk showing the value of the minors and interest to be $8,333.33, dated December 10, 1918 and having been properly recorded in the mortgage records of the Parish.

4. (Exhibit D)—A list of personal or movable property belonging to the part-

nership of Bell & Lyles, a statement of their farming operations and showing a "balance to be, divided of $2,073.17." As a part of this exhibit, and on the next to the last page thereof, appears the following:

"J. D. Bell agreed to sell 1/2 interest in the K. B. Plantation to W. B. Lyles for together with half interest in all live stock implements etc undivided for the sum of $9,000.00 with 6% interest from date of partnership on unpaid balance ........................... $9,000.00

Credits.

1/2 of crop returns after paying accounts due to J. D. Bell and store M. Bell Ltc.............. $1,036.58

Salary for 9 months paid by J. D. Bell .......................: 225.00

2 mules bought by J. D. Bell... 300.00

$1,561.58

1/2 half of inventory of mules implements and moneys advanced by W. B. Lyles of 5546.04 ....................... $2,773.02 $4,334.60

Balance due J. D. Bell for half int $4,665.40."

This exhibit consists of six sheets (the first being written with a pen and the remainder in type) bearing no evidence of having been filed in the State records or as forming a part of any official proceeding.

5. (Exhibit E)—Certified copy of a deed by "John D. Bell, married, husband of Elizabeth Troth, who is living and resides with him, * * * to Mrs. Sarah Elizabeth Lyles, widow of Wilbur Branch Lyles * * * here present, accepting and purchasing for herself, heirs and assigns * * *." The property described is that in controversy in this suit, consisting of 308¼ acres and following the description there appears the recital:

"Being further described as lot number one of a map and survey made by F. S. Robert and attached to sale passed this day to M. S. Hatfield. See A-13--541."

The price recited was $6,977.50, of which $3,977.50 was paid in cash and the balance was represented by a mortgage note in the sum of $3,000, due January 1, 1920, bearing six per cent per annum interest and stipulating attorneys' fees. The act further granted a mortgage upon the property to secure the credit portion of the price. This act is dated the 8th day of February, 1919 and was recorded March 1st of the same year.

6. (Exhibit F)—This is a certified copy of a deed by J. D. Bell to Martin S. Hatfield, also dated February 8, 1919, covering other property (presumably portion of that described in the inventory of the succession of Wilbur Branch Lyles, as well as other lands) together with "one-half interest in the mules, feed and farming implements jointly owned by vendor and Wilbur Branch Lyles."

This answer of the defendants was filed May 16, 1939. On May 26, 1939, Ellis A., Floyd C. and Daniel B. Townsend, filed an intervention in which they alleged they were the owners of the "fee title to the land involved in this case and would be seriously affected by any judgment rendered herein;" that Ellis A. Townsend had given the lease to the plaintiff, Sun Oil Company, and the other two intervenors had acquired their interest subsequently thereto; that they "herein adopt and make their own all pleadings filed by the Sun Oil Company and desire to intervene on behalf of the Sun Oil Company." They prayed that the demand by the defendants be rejected and that intervenors be decreed the owners of the land subject to the decree of the Sun Oil Company.

On the same day that the intervention was filed, the plaintiff, Sun Oil Company, and the three intervenors, filed separate motions for summary judgment wherein it was stated "that there is no genuine issue of any material fact in this case and each prayed for judgment, in favor of the intervenors, decreeing them to be the owners of the fee title of the land described in said complaint" and, in favor of the Sun Oil Company, "decreeing the oil, gas and mineral leases held" by it "to be good and valid."

Opinion.

But for the fact that some of the defendants were minors at the death of their father, Wilbur Branch Lyles, and tutorship proceedings were necessary and instituted, if the facts recited in this petition, to-wit, that Bell and Lyles were partners in a farming business (without the allegation that the partnership agreement was in writing) and that the former had agreed to sell the latter the property (not the 308½ acres which was later conveyed to Mrs. Lyles, but the whole 720 acres) without alleging that the agreement was in writing, accompanied by the written documents attached to and made part of the petition (other than the tutorship proceedings), had been alleged in this instance, a situation would have been presented wherein, clear-

ly, it would seem, a third purchaser, such as Townsend was, and the lessee, the Sun Oil Company, would have been justified in taking the title from Mrs. Lyles, as was done in 1934, and no equities as between her and her major children could have played any part in the matter. It has been held by the Courts of this State and, in fact, Articles of the Civil Code expressly provide (Article 2440) that persons purchasing real estate need look only to the conveyance records and are not affected by claims otherwise evidenced, whether known or not, except in those instances where the title is passed by operation of law, such as inheritance, will, etc. However, even as to the excepted group last mentioned, it is necessary that the person under and through whom such claims are made should, himself, have had a title within the provisions of the State law covering the methods and means by which it can be so vested. But the present case involves a question of the effect, in view of the circumstances that all but one of Lyles' heirs were minors, tutorship proceedings were had and this undivided one-half interest in the entire plantation property operated by Bell and Lyles (720 acres) was listed in the inventory of the latter's estate, an extract of which was recorded in the mortgage records of the Parish, and that the tutrix and widow in community, within about sixty days thereafter, purchased, not the one-half interest in 720 acres (as it is alleged Bell agreed to sell to Lyles for $9,000), but 308½ acres in her own name as "widow of Wilbur Branch Lyles."

■ The first question to be decided is whether the facts pleaded in the answer, plus the extracts, sufficiently show all that the case can and will involve upon a trial; and, second, whether the evidence, including the answer and exhibits, clearly demonstrate that the movers, plaintiff and intervenors, are entitled to judgment in their favor.

■ In approaching the case, it is the uniform rule that pleadings should be construed more strongly against the petitioner and it must be presumed that if he could have alleged facts entitling him to relief, he would have done so. Such failure creates the presumption that they did not exist, otherwise, they would have been pleaded. Southport Mill v. Friedrichs, 167 La. 101, 118 So. 818; W. W. Carre Co., Ltd., v. E. J. Stewart & Co., 166 La. 317,

117 So. 238; Illinois Cent. R. Co. v. New Orleans Terminal Co., 143 La. 467, 78 So. 738; Arthur v. Alexandria Lumber Co., 143 La. 207, 78 So. 469; Treadway v. Poitevent, etc., Lumber Co., 142 La. 924, 77 So. 850; Breaux Bridge Lumber Co. v. Hebert, 121 La. 188, 46 So. 206; Hughes v. Murdock, 45 La.Ann. 935, 13 So. 182; City of New Orleans v. Howcott, 8 Orleans App. 54.

■ Defendants have, by claiming ownership of an undivided one-half interest in the land as described in plaintiff's petition, made themselves plaintiffs in what is known to the Louisiana law as a petitory action and must therefore make their title good as against the world. See Dart's Louisiana Code of Practice (1932 Edition) Article 44. This Article provides: *"Plaintiff required to prove title.*—The plaintiff in an action of revendication must make out his title, otherwise the possessor, whoever he be, shall be discharged from the demand."

Defendants' counsel in brief concede this to be the law, but, of course, contend that they have alleged facts sufficient to require the offering of other evidence.

■ What, in substance, does the answer allege with respect to how defendants acquired the title? First, they say that Bell and Lyles were engaged in a planting partnership, but do not say whether the agreement was oral or in writing. Article 2836 of the Louisiana Civil Code provides: *"Part of stock in real estate—Written agreement and recordation required.*—If any part of the stock of this partnership consist of real estate, it must be in writing, and made according to the rules prescribed for the conveyance of real estate, and recorded as is hereafter prescribed with respect to partnership in commendam."

Where real property is acquired by the partners, in the absence of written articles of partnership, it becomes vested in the individual members.

Second, the Civil Code further provides:

*"2440 (2415). Immovables—Sale—Method—Verbal sales.*—All sales of immovable property shall be made by authentic act or under private signature.

"Except as provided in Article 2275, every verbal sale of immovables shall be null, as well as for third persons as for the contracting parties themselves, and the

testimonial proof of it shall not be admitted."

Hence, it clearly appears that unless there was some writing in which Bell conveyed or agreed to convey an interest in the lands which it is alleged were farmed jointly with Lyles, these allegations of the petition could not be proven. In fact, counsel for defendant appear to have abandoned any contention that the heirs of Lyles had acquired a title to the property through inheritance from him, but seem to rest their claims upon the assertion that in view of the prior oral understanding between their father and Bell, the legal effect of the deed made after the former's death to their mother, was to vest title in the succession and themselves as its beneficiaries.

This brings us to a consideration of the answer and exhibits in their effects upon the purchase by Townsend, his vendees and lessee.

Unquestionably, where one purchases from a tutor or administrator, he is at once put on notice that he is dealing with a person in a representative capacity and is bound to know the extent of the latter's authority. This is also true, I think, where, although the act or transfer purports to be from the agent individually, the property is in reality owned by his cestui qui trust. In other words, he cannot divest his principal of title (to real property) by a deed in his own name. On the other hand, the agents (including tutors and administrators) are free to buy and sell lands, except those belonging to their principals. But the law of this State is so jealous of its system of simple titles that a principal even is not permitted to prove that an agent took title in his own name to property which he was instructed to buy for this principal. Perrault v. Perrault, 32 La.Ann. 635.

It seems to be the argument of counsel for the defendants that because Mrs. Lyles had qualified as tutor for her minor children, which fact was disclosed by the probate records, when she purchased from Bell, February 8, 1919, this required Townsend, her vendee, in 1934, to examine the tutorship proceedings; that in doing so he would have found an undivided one-half interest in some 720 acres of land (which included the property he was about to purchase) inventoried as belonging to the succession of Wilbur Branch Lyles, based upon the statement of the appraisers and the tutor that Bell had agreed to sell the same to Lyles at a price of $9,-000, all of which it is argued was sufficient to put him on notice that defendants had an interest in the land he was about to buy. However, Townsend would have had to go further and figure out that the $3,000 recited as the cash portion of the price paid by Mrs. Lyles to Bell was furnished by the succession, and that she intended to buy for it and to obligate it (which meant the minors) for one-half of the credit portion of the price, a thing she could not do without an order from the Court based upon the recommendation of a family meeting. R.C.C. arts. 353, 3072 and 3302. There is nothing alleged or which otherwise appears to indicate that such authority was obtained. All of these matters were outside of and beyond the conveyance records, to which, according to the law of Louisiana, Townsend had to look in ascertaining the nature of the title owned by his vendor, Mrs. Lyles. R.C.C. arts. 2266, 2246. I do not believe that he was bound to inspect the probate records, merely because the succession had been opened and Mrs. Lyles had qualified as tutrix, but think he was entitled to rely upon the recorded deed in which she appeared to be the purchaser in her own right. It is true that the deed from Bell to Mrs. Lyles referred to her as the "widow of Wilbur Branch Lyles", but this was necessary under the State law to show her marital status, and otherwise upon its face it clearly purported to be one passing the title to her individually, for which she had paid the cash portion of the price and in the same manner assumed payment of the balance secured by mortgage. Succession of Fay, 161 La. 1022, 109 So. 824.

Defendants have attempted to assimilate the present case to those where homestead or other entry of public lands were involved. In such cases it is held that where final proof, etc., had been completed, except the formality of issuing the patent before the death of the entry man, the title enured to his estate or to the community, if such existed when finally conveyed. Smith v. Anacoco Company, 157 La. 466, 102 So. 574, 576. In this last case, the State Supreme Court said "when it appears that the entryman has done all that is required of him under the homestead law, including the submission of final proof to the government, he then has a vested interest in the land, and if the community has not been dissolved, the inter-

est, which then vests, falls into it, and, as that interest is a community interest, the land, upon the issuance of the patent, will be deemed community property." The Court called attention to the fact that everything had been done which entitled the entryman to a patent before his death, including the submission of final proof and payment of fees, so that all that remained was the performance of a ministerial duty by the Land Office, to-wit, the issuance of the patent. It differentiated between the case it was then considering and that of Wadkins v. Producers' Oil Company, 130 La. 308, 57 So. 937, wherein, notwithstanding the entryman had commenced his residence on the land, but "before he had occupied it for five years his wife died. He continued to occupy the land after her death, and at the expiration of the required period made final proof, and obtained a patent. Later he sold the property." The wife's heir sought to claim a one-half interest in the land but her demands were rejected and the ruling was affirmed by the Supreme Court of the United States in Wadkins v. Producer Oil Company, 227 U.S. 368, 33 S. Ct. 380, 57 L.Ed. 551.

In the later case of Succession of Fay, supra, the State Court, with the same Justice (Overton) as its organ, had under consideration a situation where a written contract to sell and purchase had been entered into by the husband, with a third person before the death of his first wife. This contract recited that the proposed purchaser should pay a total of $3,400, $400 of which was acknowledged to have been paid in cash, at the signing of the contract on May 18, 1909, "during the régime of the community that existed between him and his first wife", and the balance was represented by three notes of $1,000 each, payable in one, two, three years from date. "Less than a year after this contract was entered into, the first Mrs. Fay died. After her death, Fay met the payments on the property as they matured. On April 10, 1912, he married Marie Bel. During the existence of this marriage, and a little over a month after it was contracted, to wit, on May 18, 1912, the last note, given under the contract of purchase, fell due, and was paid by Fay. The payment was not made with funds belonging to the second community. On May 20, 1912, two days following the last payment made, the Southern Land Company, by notarial act, deeded the property to Fay, with full warranty of title, for the recited consideration of $3,400 cash. * * * A little over two years after the execution of this deed, the second Mrs. Fay died, leaving her husband and * * * two minors". [161 La. 1022, 109 So. 825.] Believing that the property belonged to the first community, Fay acquired the interest of his children of that marriage and subsequently sold the whole. The Court said "the question is presented whether the property, when acquired by Fay, vested in the first or second community." In disposing of the matter, the Court further said:

"It is obvious that until Fay acquired the property it fell into neither community, but remained the property of the Southern Land Company. We must look, therefore, to the time at which Fay acquired the property. Civil Code, art. 2402, as amended by Act 68 of 1902. If he acquired it at the time the agreement to purchase was entered into, then it fell into the first community, for that community was then in existence. If, however, he did not acquire it until the deed was executed by the Southern Land Company to him, on May 20, 1920, then, we think, the land fell into the second community, which was then in existence. It cannot be said, if the property was not acquired by Fay until May 20, 1912, that the title related back to the first community, for the doctrine of relation has no application here. It is the time when the property was acquired that must be looked to in determining its status.

"To determine when the property, in this instance, was acquired by Fay, it is necessary to decide what effect should be given to the instrument of May 18, 1909, which we have termed 'a contract to purchase,' or, in other words, it is necessary to determine whether that instrument transferred the title to the property from the Southern Land Company to Fay.

"Taking that question up for consideration it may be observed that it was said in Trichel v. Home Ins Co., 155 La. 459, 99 So. 403, quoting from the syllabus (which is in accord with the text of the decision) that:

" 'In case of sale of real estate, neither consent nor delivery nor payment of price is sufficient to transfer the ownership; but there must be a deed translative of the title.' "

912

In the same case it was held that:

"'Any agreement for the sale of real estate, which is not intended to be the final writing between the parties, but, on the contrary, to be followed by another and final deed, is a mere promise of sale and not a sale, and does not transfer the title to said property; unless it clearly appear that the parties contemplated that the new deed should be only a confirmation of the first, and not indispensable for the transfer of title.'

"Applying the foregoing principles to the contract under consideration, our conclusion is that the contract is a mere promise of sale, or, which is the same, a mere contract to purchase. It is merely an agreement by which one party agrees to sell and the other to buy, the deed transferring title to be delivered upon the payment of certain installments. It is true that in one place in the contract it is stipulated that Fay 'agrees to purchase and does purchase,' and that in one or two places the Southern Land Company is referred to as the vendor and Fay as the purchaser; but these expressions are not controlling, for the instrument, as a whole, shows that it is merely a promise of sale. Moreover, that it is only such is made clear by the provision relative to the delivery of a deed upon the payment of the installments. There could have been no other reason, in this instance, to withhold the deed, than not to convey title until the payment of the installments, and no other reason to execute and deliver the deed, after the payment of the installments, than to convey title. See, in this connection, Capo v. Bugdahl, 117 La. 992, 42 So. 478; Campbell v. Richmond Ins. Co., 156 La. 455, 100 So. 679.

"Since the contract under consideration was a mere promise of sale, it follows under the authorities cited that it did not have the effect of transferring title. Therefore, as the first Mrs. Fay died before title was transferred, title to the property did not vest in the first community, but remained in the Southern Land Company until the execution of the deed conveying the property. As the second community was in existence at the time the deed was executed and delivered to Fay, the property fell into that community, with the obligation upon it to reimburse Fay the money paid by him out of his separate estate, if any, on account of the purchase price of the property."

All the more reason there is, in the case now under consideration, for holding that no title vested in Lyles or his estate. The alleged agreement, if it existed, must have been, as pointed out above, under the allegations of the petition, oral, and it could not be proven because of codal provisions.

Counsel for defendants argue that there could be no reason why a succession or estate could not buy real property. Without finding it necessary to inquire into the correctness of this assertion, I think that in such event the deed would, itself, necessarily show that the property was being so purchased by and was intended to vest in the estate; whereas here, the deed was to Mrs. Lyles individually, and in an attempt to prove the title in the heirs of Lyles, it is necessary to resort to extraneous sources, succession records, verbal assertions by appraisers, etc., which could not be binding on third persons, such as Townsend who was entitled to rely upon the conveyance records.

My conclusion is that, accepting as true all relevant facts alleged in the answer, it conclusively appears that the defendants could not sustain their title, and that plaintiff and intervenors are entitled to summary judgment, rejecting the plaintiff's demands and ordering the documents described in the petition cancelled from the records of Avoyelles Parish.

Proper decree should be presented.