# BROWN *v.* HITCHCOCK.[1]

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 581. Argued February 23, 24, 1899. — Decided April 3, 1899.

Under the act of September 28, 1850, c. 84, 9 Stat. 519, known as the Swamp Land Act, the legal title to land passes only on delivery of a patent, and as the record in this case discloses no patent, there was no passing of the legal title from the United States, whatever equitable rights may have vested. Until the legal title to land passes from the Government, inquiry as to all equitable rights comes within the cognizance of the land department.

Although cases may arise in which a party is justified in coming into the

---

[1] The docket title of the case is *Brown* v. *Bliss*. Mr. Bliss having resigned as Secretary of the Interior, his successor was substituted in his place.

courts of the District of Columbia to assert his rights as against a pro-
ceeding in the land department, or when that department refuses to act
at all, yet, as a general rule, power is vested in the department to deter-
mine all questions of equitable right and title, upon proper notice to the
parties interested, and the courts should be resorted to only when the
legal title has passed from the Government.

ON May 10, 1898, the appellant, as plaintiff, filed in the
Supreme Court of the District of Columbia his bill, setting
forth, besides certain jurisdictional matters, the Swamp Land
Act of September 28, 1850, c. 84, 9 Stat. 519; the extension of
that act to all the States by the act of March 12, 1860, c. 5,
12 Stat. 3; a selection of lands thereunder by the State of
Oregon (evidenced by what is called "List No. 5,") and an
approval on September 16, 1882, of that selection by the Sec-
retary of the Interior; a purchase in 1880 from the State by
H. C. Owen, of certain of those selected lands, and subsequent
conveyances thereof to plaintiff. Then, after showing the ap-
pointment of Hon. William F. Vilas, as Secretary of the Inte-
rior, the bill proceeds:

"That, as plaintiff is informed and believes, on the 27th day
of December, A.D. 1888, the said Secretary of the Interior, then
the said William F. Vilas, made and entered an order annul-
ling, cancelling and revoking the said 'List number 5,' and
the approval thereof, and annulling and revoking the said judg-
ment and determination so made by his said predecessor in said
office, the said Henry M. Teller, whereby his said predecessor
had adjudged and determined that the lands aforesaid were
swamp and overflowed lands within the meaning of the acts
aforesaid, and made and entered an order purporting to ad-
judge and determine that certain of the lands described in
said 'List number 5,' including the lands hereinbefore de-
scribed, were not swamp and overflowed lands within the
meaning of the acts aforesaid.

"That thereafter, as plaintiff is informed and believes, divers
proceedings were taken before the said Secretary of the In-
terior and in the general land office of the United States by
the State of Oregon and by the grantors of this plaintiff to set
aside and have held for naught the orders and rulings so made

by the said William F. Vilas as such Secretary of the Interior, which proceedings came to an end within one year last past.

" That, as plaintiff is informed and believes, since the said proceedings last aforesaid came to an end, the defendant, as such Secretary of the Interior, is proceeding to put in force and to carry out the orders and rulings so as aforesaid made by the said William F. Vilas as such Secretary of the Interior and to hold the lands hereinbefore described to be public lands of the United States and subject to entry under the laws of the United States, and threatens and intends to receive and permit the officers of the land department of the United States to receive applications for and allow entries of the lands aforesaid as public lands of the United States."

After alleging the invalidity of these proceedings, the bill goes on to aver that the proceeding thus initiated by Secretary Vilas throws a cloud upon appellant's title, " and is likely to cause many persons to attempt to settle upon the said lands and to enter the same in the land department of the United States as public lands of the United States subject to such entry, and that plaintiff will be unable to remove such persons from said lands or to quiet his title thereto as against them without a multiplicity of suits, and that therefore this plaintiff is entitled in this court to an order enjoining and restraining the defendant, as such Secretary of the Interior, and his subordinate officers of the land department of the United States, from in any way carrying said last mentioned orders and rulings into effect, and from permitting any entries upon said lands or holding the same open to entry, and from in any way interfering with or embarrassing the plaintiff in his title and ownership of the lands aforesaid."

Upon these facts plaintiff prayed a decree cancelling the order of December 27, 1888, restraining the officers of the land department from carrying it into effect, and forbidding the defendant and his subordinates from holding the lands to be public lands of the United States or subject to entry under the general land laws. To this bill a demurrer was filed, which was sustained, and the bill dismissed. Plaintiff appealed to the Court of Appeals of the District, and upon an affirmance

of the decree by that court brought the decision here for review.

*Mr. W. B. Treadwell* for appellant. *Mr. Charles A. Keigwin* was on his brief.

*Mr. Assistant Attorney General Van Devanter* for appellee.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

Under the Swamp Land Act the legal title passes only on delivery of the patent. So the statute in terms declares. The second section provides that the Secretary of the Interior, "at the request of said Governor [the Governor of the State,] cause a patent to be issued to the State therefor; and on that patent, the fee simple to said lands shall vest in the said State." *Rogers Locomotive Works* v. *American Emigrant Company*, 164 U. S. 559, 574; *Michigan Land & Lumber Co.* v. *Rust*, 168 U. S. 589, 592.

In this case the record discloses no patent, and therefore no passing of the legal title. Whatever equitable rights or title may have vested in the State, the legal title remained in the United States.

Until the legal title to public land passes from the Government, inquiry as to all equitable rights comes within the cognizance of the land department. In *United States* v. *Schurz*, 102 U. S. 378, 396, which was an application for a mandamus to compel the delivery of a patent, it was said:

"Congress has also enacted a system of laws by which rights to these lands may be acquired, and the title of the Government conveyed to the citizen. This court has, with a strong hand, upheld the doctrine that so long as the legal title to these lands remained in the United States, and the proceedings for acquiring it were as yet *in fieri*, the courts would not interfere to control the exercise of the power thus vested in that tribunal. To that doctrine we still adhere"

While a delivery of the patent was ordered, yet that was so

ordered because it appeared that the patent had been duly executed, countersigned and recorded in the proper land records of the land department and transmitted to the local land office for delivery, and it was held that the mere manual delivery was not necessary to pass the title, but that the execution and record of the patent were sufficient. And yet from that conclusion Chief Justice Waite and Mr. Justice Swayne dissented. The dissent announced by the Chief Justice only emphasizes the proposition laid down in the opinion, as heretofore quoted, that so long as the legal title remains in the Government all questions of right should be solved by appeal to the land department and not to the courts. See in support of this general proposition *Michigan Land & Lumber Co.* v. *Rust, supra,* (which, like the present case, arose under the Swamp Land Act,) and cases cited in the opinion. Indeed, it may be observed that the argument in behalf of appellant was avowedly made to secure a modification of that opinion. We might well have disposed of this case by a simple reference to that decision; but in view of the earnest challenge by counsel for appellant of the views therein expressed, we have reëxamined the question in the light of that argument and the authorities cited. And after such reëxamination we see no reason to change, but on the contrary we reaffirm the decision in *Michigan Land & Lumber Co.* v. *Rust.* As a general rule no mere matter of administration in the various Executive Departments of the Government can, pending such administration, be taken away from such Departments and carried into the courts; those Departments must be permitted to proceed to the final accomplishment of all matters pending before them, and only after that disposition may the courts be invoked to inquire whether the outcome is in accord with the laws of the United States. When the legal title to these lands shall have been vested in the State of Oregon, or in some individual claiming a right superior to that of the State, then is inquiry permissible in the courts, and that inquiry will appropriately be had in the courts of Oregon, state or Federal.

We do not mean to say that cases may not arise in which a party is justified in coming into the courts of the District to

assert his rights as against a proceeding in the land depart-ment or when the department refuses to act at all. *United States* v. *Schurz, supra,* and *Noble* v. *Union River Logging Railroad Co.,* 147 U. S. 165, are illustrative of these excep-tional cases.

Neither do we affirm that the administrative right of the departments in reference to proceedings before them justifies action without notice to parties interested, any more than the power of a court to determine legal and equitable rights per-mits action without notice to parties interested.

" The power of supervision and correction is not an unlimited or an arbitrary power. It can be exerted only when the en-try was made upon false testimony or without authority of law. It cannot be exercised so as to deprive any person of land law-fully entered and paid for. By such entry and payment the purchaser secures a vested interest in the property and a right to a patent therefor, and can no more be deprived of it by order of the Commissioner than he can be deprived by such order of any other lawfully acquired property. Any attempted deprivation in that way of such interest will be corrected when-ever the matter is presented so that the judiciary can act upon it." *Cornelius* v. *Kessel,* 128 U. S. 456, 461. "The Government holds the legal title in trust for him, and he may not be dis-possessed of his equitable rights without due process of law. Due process in such case implies notice and a hearing. But this does not require that the hearing must be in the courts, or forbid an inquiry and determination in the land depart-ment." *Orchard* v. *Alexander,* 157 U. S. 372, 383.

But what we do affirm and reiterate is that power is vested in the Departments to determine all questions of equitable right or title, upon proper notice to the parties interested, and that the courts must, as a general rule, be resorted to only when the legal title has passed from the Government. When it has so passed the litigation will proceed, as it generally ought to proceed, in the locality where the property is situate, and not here, where the administrative functions of the Government are carried on.

In the case before us there is nothing to show that proper

notice was not given; that all parties in interest were not fully heard, or that the adjudication of the administrative department of the Government was not justified by the facts as presented. The naked proposition upon which the plaintiff relies is that upon the creation of an equitable right or title in the State the power of the land department to inquire into the validity of that right or title ceases. That proposition cannot be sustained. Whatever rights, equitable or otherwise, may have passed to the State by the approval of List No. 5 by Secretary Teller, can be determined, and should be determined, in the courts of Oregon, state or Federal, after the legal title has passed from the Government. The decree of the Supreme Court of the District of Columbia, sustained by the opinion of the Court of Appeals of the District, was right, and is

*Affirmed.*

Mr. Justice McKenna took no part in the consideration and decision of this case.