THOMAS W. SIMS v. HARRIET J. MORRISON and Others.[1]

June 10, 1904.

Nos. 13,920—(72).

**Public Land.**

The courts have no jurisdiction in controversies involving equitable rights to public lands, except in possessory actions, so long as the legal title remains in the general government.

**Trust—Pleading.**

One Roberts filed upon the land in question in this action as a homestead, complied with all the requirements of the homestead laws, and subsequently submitted final proof of his entry, but no final receipt or patent was ever issued to him. After making his final proof, he entered into a contract with plaintiff by which he sold and transferred to plaintiff all the timber standing upon the land. A contest had been entered against his entry prior to the time he made final proof, which was determined adversely to the contestant; but, subsequent to the contract conveying the timber to plaintiff, the notice of contest was amended by adding as a new ground thereof that Roberts had violated the homestead laws by conveying the timber to plaintiff prior to the issuance to him of the receiver's final receipt. Roberts thereafter, in consideration of the sum of $100 paid to him by the contestant, relinquished his entry, and the contestant was permitted to enter the same under the stone and timber act. Defendants in this action, the heirs of the contestant, made proof of such entry, and final receipt was issued to them. Plaintiff thereafter brought this action under the Roberts contract to impress the land in the hands of defendants with a trust in favor of plaintiff to the extent of the rights granted by such contract. It is *held* that, as the legal title to the land is in the general government, the action cannot be maintained, and the demurrer to the complaint was properly sustained.

Appeal by plaintiff from an order of the district court for Itasca county, McClenahan, J., sustaining a general demurrer to the complaint. Affirmed.

*White & Price,* for appellant.

*M. H. McMahon* and *Marshall & Whipple,* for respondents.

From the authorities we deduce the following conclusions, which sustain our demurrer and the order of the court thereon: 1. This suit

[1] Reported in 100 N. W. 88.

involves a question of title, as contradistinguished from one of possession merely, for the reason that the timber, title to which is involved, was and is a part of the real estate.  2. That the determination of this question by the courts depends upon whether or not the jurisdiction and control of the executive department has ceased.  3. That if it has not, the courts are without jurisdiction.  4. That when the jurisdiction and control of that department ceases is a question to be determined by the rule of the federal courts.  5. That the supreme court has pointedly and repeatedly held that this jurisdiction and control does not cease until the legal title actually passes from the government by the issue of the patent, irrespective of the fact of the pendency of any contests in the department.  6. That the vacation and cancellation of the Roberts' patent was not a nullity as to Sims, but that his rights, if affected thereby, should have been litigated in the land department as long as that department has jurisdiction, that is, until the patent is issued.  7. That every presumption of regularity in proceedings, including the giving of all due notices of the hearing of any contest pending therein to all parties entitled by law to receive the same, must be indulged in in support of the action of the local land office in cancelling said Roberts' entry.  8. That their action at that time was judicial in its character, and not subject to collateral attack.  9. That this action is nothing more or different than such collateral attack.  10. That there can be no bona fide purchasers of land once the property of the United States, who acquire their interests prior to the issue of patent.  11. That prior to the issue of patent, and a fortiori during the pendency of one or more contests in the land department and before the issue of the final receipt, the entryman Roberts did not have the right to cut and remove the timber himself, save only for the purpose of actual occupation and improvement, and then such use, occupation and tillage must follow such removal acre by acre in pursuance of a definite plan of improvement, and such fact must be made to appear.  12. That he could not remove it for the purpose primarily of sale, nor could he confer upon others the right to do so.  13. That such attempt was illegal and void, and conferred no right upon plaintiff as against either subsequent entryman, or against the United States.

BROWN, J.

Appeal from an order sustaining a general demurrer to the complaint.

The facts stated in the complaint are, in substance, as follows: On August 16, 1894, one Roberts, through whom plaintiff claims, made homestead entry of the land in controversy; entered upon and continued his residence thereon until July, 1900, when he made and submitted to the interior department final proof of his entry and settlement. Prior to making final proof, on September 22, 1899, one O'Connell filed a contest against his entry, alleging as a basis thereof that Roberts had abandoned his claim. The contest was decided by the local land office adversely to O'Connell and in favor of Roberts, which decision was affirmed by the commissioner of the general land office, and later by the secretary of the interior; the decision of the latter official having been made on November 23, 1900. One James H. Morrison also entered a contest against Roberts, alleging an abandonment of the claim by him, and this contest was pending and undetermined at the time the secretary of the interior rendered his decision adverse to the O'Connell contest. On December 13, 1900, subsequent to making final proof, and during the pendency of the Morrison contest, Roberts deeded or attempted to transfer to plaintiff the timber then standing and growing upon the land. Prior to that date no final receipt or patent had ever been issued to Roberts. In fact, none was ever issued to him. Subsequently, on April 1, 1901, Morrison was permitted to amend his notice of contest against the Roberts entry by adding, as a new ground therefor, the sale or attempted sale of the timber by Roberts to plaintiff.

The complaint further alleges that a special agent of the interior department called upon Roberts, and represented to him that he had violated the law by making a sale of the timber before the issuance of the final receipt, and was subject to the punishment prescribed therefor by the homestead laws. Thereafter, on July 6, 1901, said Roberts, influenced thereto by threats of prosecution by said agent, and in consideration of the sum of $100 to him paid by Morrison, relinquished his entry to the general government, and the officers of the interior department permitted Morrison to file thereon under an act of Congress known as the "Stone and Timber Act." Morrison subsequently died,

and his heirs, the defendants in this action, made payment for the land under his entry, and final receipt was issued to them.

Plaintiff brought this action, basing his right of recovery upon his contract with Roberts, and demands judgment that the plaintiff be decreed the owner of all the timber standing upon the land in question, and that it be further decreed that defendants have no title or right to said timber, but title to the land only, and adjudging and decreeing also that defendants be compelled to convey to plaintiff, by good and sufficient title, the timber, and, if they fail to do so, that title thereto be vested in plaintiff by judgment and decree of the court. The trial court sustained defendants' demurrer to the complaint on the ground that the action, being one to impress the land with a trust in favor of plaintiff, could not be maintained so long as the legal title to the land remained in the government. Whether the trial court was right in this conclusion is the only question for our consideration.

We are not concerned with the question whether plaintiff's contract with Roberts was valid or invalid. If valid, it vested in plaintiff an interest in the land, for the timber attempted to be conveyed thereby was a part of the realty. It is probable, within some of the decisions of the interior department, including those of the commissioner of the general land office and the secretary of the interior, that the contract, though made before final receipt was issued to Roberts, was valid and enforceable. The cases cited by appellant sustain the general proposition that an entryman under the homestead laws may, after he has perfected final proof of his entry, sell and convey the land to a third person before final receipt or patent is issued, and vest in the purchaser all rights possessed by him. In such cases the government will, upon proper showing, issue the patent to the purchaser. Magalia Gold Min. Co. v. Ferguson, 6 Land Dec. Dep. Int. 218; Orr v. Breach, 7 Land Dec. Dep. Int. 292; Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122.

But rights thus acquired are equitable in their nature, and must be adjusted in the land department, where relief is sought before patent issues. So it may be conceded for the purposes of this case that the Roberts contract was a valid transfer to plaintiff of the timber standing upon the land, and we are confronted with the question whether the rights thus acquired may be enforced in the courts before the legal title to the land has passed from the government.

The object of this action is to impress the land in the hands of defendants with a trust in favor of plaintiff, to the extent that plaintiff may be awarded the right to enter into possession of the same for the purpose of cutting and removing the timber under the Roberts contract. The legal title to the land is in the general government. No final receipt was ever issued to Roberts under his homestead entry and final proof, and, subsequent to making the contract with plaintiff here relied upon, he relinquished his entry, and the ancestor of defendants was permitted to file thereon, and to defendants, upon final proof under his entry, a final receipt was issued. Morrison had full notice of whatever rights plaintiff had under the Roberts contract at the time of filing upon the land, and he took the same subject to whatever rights plaintiff had therein. Defendants, his heirs, are in no better position than he would have been, had he lived, and this action been brought against him.

But these facts are unimportant. The question presented is whether the court has jurisdiction to grant such relief, and adjust the equities of the parties, before the legal title has passed from the general government, notwithstanding the validity of the Roberts contract, and that defendants are bound thereby.

A trust, as remarked by Justice MITCHELL in Hospes v. N. W. Mnfg. & Car Co., 48 Minn. 192, 50 N. W. 1117, implies two estates or interests—one equitable and one legal; one person, as trustee, holding the legal title, while another, as cestui que trust, has the beneficial or equitable interest. This is an accurate statement of the general rule running through all the adjudged cases, and none are cited holding that real property will be impressed with a trust against one who holds only an equitable title. The rule applies with greater force to the case at bar, for here the legal title to the land is in the general government, with no certainty that it will ever become vested in defendants, and the rights of both are purely equitable. The government has the paramount and sole authority to dispose of its lands, and, until it parts with and conveys its title, the courts are powerless to aid litigants in controversies affecting or involving individual claims thereto.

Actions involving merely possessory rights do not come within that rule. Actions of that nature, though the legal title be in the government, may be entertained in the courts, and full and adequate relief

granted the contending parties, even before the legal title has passed from the government. That rule was followed and applied in Matthews v. O'Brien, 84 Minn. 505, 88 N. W. 12, and in Michaelis v. Michaelis, 43 Minn. 123, 44 N. W. 1149. But controversies involving the legal title must be fought out before the land department of the general government.

Section 5754, G. S. 1894, providing that the receiver's final receipt issued by the United States Land Office is prima facie evidence of title, does not change the general rule in this respect. That statute is a mere rule of evidence, and was not intended to create or vest title to government lands, and it cannot be construed as fixing a time when the title to such lands passes to an entryman under the homestead laws.

The action at bar is something more than one involving the possession of the land—it involves an interest in the land—and the relief prayed for cannot, within the authorities, be granted by the courts until the government has parted with its title. It was said in Brown v. Hitchcock, 173 U. S. 473, 19 Sup. Ct. 485—an action involving rights in government land: "In this case the record discloses no patent, and therefore no passing of the legal title. Whatever equitable rights or title may have vested in the state, the legal title remained in the United States. Until the legal title to public land passes from the government, inquiry as to all equitable rights comes within the cognizance of the land department." The rule is clearly stated in McCord v. Hill, 104 Wis. 457, 80 N. W. 735, as follows: "It is only after the United States has parted with its title, and the individual has become vested with it, that the equities on which he holds it may be enforced, and not before. * * * Such being the law, a complaint which seeks to have the court adjust equities between rival claimants to government land is fatally defective if it fails to show that the title has become vested in the individual against whom it is sought to enforce supposed equities." See also Empey v. Plugert, 64 Wis. 603, 25 N. W. 560; Marquez v. Frisbie, 101 U. S. 473; United States v. Schurz, 102 U. S. 378; In re Emblen, 161 U. S. 52, 16 Sup. Ct. 487.

For these reasons, the court below properly sustained the demurrer to plaintiff's complaint, and the order appealed from is affirmed.