**GEORGE H. RUTH et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 96–286L.**

United States Court of Federal Claims.

April 11, 1997.

Forrest A. Hainline III, Washington, DC, for plaintiffs.

Kristine S. Tardiff, Washington, DC, with whom was Attorney General Lois J. Schiffer, for defendant. Lori Monroe, U.S. Department of the Interior, Office of the Solicitor, Division of Land & Water, of counsel.

## OPINION

MILLER, Judge.

This case is before the court after argument on defendant's motion for judgment on the pleadings. Defendant contends that it is entitled to judgment under RCFC 12(b)(1) and (c).[1] The issues for decision are whether plaintiffs' claims are barred by the statute of limitations, whether an implied-in-fact trust relationship exists between the United States and plaintiffs, and assuming, *arguendo*, that a trust relationship exists, whether the trust is an income-producing trust sufficient to grant the Court of Federal Claims jurisdiction.

## FACTS

Plaintiffs are the heirs to Georga McAlister ("Georga"). Georga's father, Napoleon McAlister ("Napoleon"), entered property on October 19, 1872, pursuant to the Homestead Act of May 20, 1862, c. 75, 12 Stat. 392. The Act provided that, if an entryman, such as Napoleon, resided on and cultivated the subject property for a period of five years, upon submitting proof that he had fulfilled these requirements, he would become entitled to a final certificate and patent from the United States for the property. Prior to perfecting a patent in the land, Napoleon died on December 1, 1873, and was survived by his widow, Sarah McAlister ("Sarah") and one child, a minor daughter, Georga McAlister ("Georga").[2] Thereafter, Sarah completed the requirements of the Act and on November 24, 1877, submitted final proof that such requirements were met. Prior to issuance of the patent, however, Sarah died on December 18, 1879, and the property was conveyed to two third parties on January 19 and February 9, 1880. Plaintiffs maintain that these conveyances did not occur for Georga's benefit.

On December 30, 1882, approximately three years after Sarah's death, the United States issued a patent for the Homestead property to "Sarah F.A. McAlister, widow of Napoleon B. McAlister, deceased." This patent was not actually delivered to Georga. Furthermore, the patent was not recorded in the local land office tract book; however, the patent was recorded in one of patent books for Dardanelle, Arkansas maintained by the General Land Office. Specifically, a patent issued in the name of Sarah McAlister and was recorded with the Bureau of Land Management in Dardanelle Homestead Volume 5, page 325.

Plaintiffs claim that "[u]nder the provisions of the Homestead Act, all rights to the property were to [i]nure to the benefit of Georga McAlister, Napoleon and Sarah's minor child." Complaint filed May 22.1996, ¶ 8. By "operation of law, upon the death of Sarah McAlister, the legal right and benefit to the Property passes to Georga McAlister, with the United States holding the Property as trustee of those rights." Compl. ¶ 9. Plaintiffs contend that Georga was a beneficiary to a land patent under the Homestead Act, Revised Statutes, and case law; that the United States failed to deliver or record a land patent; and, therefore, the United States continues to hold title to the property in question by mistake. On this basis plaintiffs assert that the United States has a

---

1. During argument the parties agreed that the motion was tantamount to a motion for summary judgment. Accordingly, the court treats it as such. Transcript of Proceedings, *Ruth v. United States*, No. 96–286L, at 3–4 (Fed.Cl. Feb. 21, 1997) (hereinafter "Tr.").

2. "Georga McAlister is the only child born to Sarah McAlister by Napoleon McAlister." Plfs' Separate Statement of Undisputed Facts, filed Jan. 30, 1997, at 2. During argument it was revealed that Georga had some half-siblings. Tr. at 32.

continuing trust obligation to Georga and her heirs. Furthermore, plaintiffs contend that the two conveyances of the interests in the subject property were not proper and that the United States breached an implied-in-fact trust obligation to deliver the patent to Georga or sell the subject property for her benefit.

Defendant responds that the court does not have jurisdiction over plaintiffs' claims as the claims 1) are barred by the statute of limitations; 2) represent an appeal from an IBLA decision; 3) are implied in law; and 4) are not equivalent to an implied-in-fact contract. Argument narrowed the issues to 1) whether plaintiffs' claims are barred by the statute of limitations, 2) whether an implied-in-fact trust exists, and 3) if a trust relationship exists, whether it is an income-producing trust over which the court has jurisdiction.

### DISCUSSION

*1. The Homestead Act*

■ Section 1 of the Homestead Act provides:

> That any person who is the head of a family ... shall ... be entitled to enter one quarter section or a less quantity of unappropriated lands.....

After residing on and cultivating the entered property for a specified period of time, the entryman submitted proof that the requirements of the Act were fulfilled, and the entryman then became entitled to receive a final certificate and patent from the United States for the subject property.

The parties agree that the dispute centers on sections 2291 and 2292 of the Revised Statutes of the United States, which are based on the provisions of the Homestead Act. Section 2291 provides:

> No certificate, however, shall be given, or patent issued therefor, until the expiration of five years from the date of such entry; and if at the expiration of such time, or at any time within two years thereafter, the person making such entry; or if he be dead, his widow; or in case of her death, his heirs or devisee; or in case of a widow making such entry, her heirs or devisee, in case of her death, proves by two credible witnesses that he, she, or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of said land has been alienated, ... and that he, she, or they will bear true allegiance to the Government of the United States; then, in such case, he, she, or they, if at that time citizens of the United States, shall be entitled to a patent as in other cases provided by law.

Revised Statutes § 2291 (1875). Section 2292 provides:

> In case of the death of both father and mother, leaving an infant child or children under twenty-one years of age, the right and fee shall inure to the benefit of such infant child or children; and the executor, administrator, or guardian may, at any time within two years after the death of the surviving parent, and in accordance with the laws of the State in which such children for the time being, have their domicile, sell the land for the benefit of such infants, but for no other purpose; and the purchaser shall acquire the absolute title by the purchase, and be entitled to a patent from the United States on the payment of the office-fees and sum of money above specified.

Revised Statutes § 2292 (1875). "The object of the sections in question was ... to provide the method of completing the homestead claim, and obtaining a patent therefor, and not to establish a line of descent or rules of distribution of the deceased entry man's estate." *Bernier v. Bernier*, 147 U.S. 242, 245–46, 13 S.Ct. 244, 245–46, 37 L.Ed. 152 (1893). These provisions "point out the conditions on which the homestead claim may be perfected and a patent obtained, and these conditions differ with the different position in which the family of the deceased entry man is left upon his death." *Id.* at 246, 13 S.Ct. at 246.

The Supreme Court expressly has rejected any attempt to circumvent the clarity of the provisions. *See, e.g., McCune v. Essig*, 199 U.S. 382, 389, 26 S.Ct. 78, 80, 50 L.Ed. 237 (1905) ("It requires an exercise of ingenuity to establish uncertainty in these provisions."). For example, in *McCune*, William

and Sarah McCune settled on property under the homestead laws. William filed a homestead claim in 1884 and died intestate later that same year, leaving Sarah and a daughter, Mary, as his sole heirs. Sarah and Mary lived on the land until 1889 when Mary filed a proof of homestead claim. A patent issued to her for the property in 1891. In 1892 Sarah sold the property to N. Fred and Emma Essig who remained in possession until the lawsuit. Mary brought suit to establish title to an undivided one-half interest in the property and to obtain an accounting of rents and profits and a partition.

The Supreme Court determined that "[w]hat interest arose in [William] by his entry, who could, upon his death, fulfil[l] the conditions of settlement and proof, and to whom and for whom title would pass, depended upon the laws of the United States." *Id.* at 388, 26 S.Ct. at 79. By providing "the method of completing the homestead claim and obtaining a patent therefor," the Homestead Act set forth a specific order of interest in homestead property. *Id.* at 390, 26 S.Ct. at 80. Under the Act, if a husband dies prior to perfecting his interest in the land, his widow is "given the right of residence and cultivation, and 'shall be entitled to a patent, as in other cases.'" *Id.* at 389, 26 S.Ct. at 80 (quoting Revised Statutes § 2291). If both parents shall die, only then does the "right and fee ... inure to the benefit of the [minor] children" under section 2292. Therefore, the Court determined that, so long as Sarah McCune was alive prior to the issue of the patent, Mary McCune did not have a beneficial interest in the land under the Act; Mary essentially attempted to take a paramount interest to that of her mother under state law. This directly countermanded the priorities set forth in the Act. Accordingly, the Court denied Mary's claim.

In the present case, plaintiffs correctly contend that the cited provisions grant orphans like Georga beneficial rights in homestead property. Indeed, the Homestead Act creates three categories of beneficiaries: "(1) the entryman, (2) his widow, she performing and proving her performance of the conditions, to wit, residence and cultivation of the land for the time prescribed; and (3)— 2292—a child or children under twenty-one years of age." *Wadkins v. Producers Oil Co.*, 227 U.S. 368, 371, 33 S.Ct. 380, 382, 57 L.Ed. 551 (1913). The beneficiaries' rights under the Act are paramount to those provided under state law. *Id.; see McCune*, 199 U.S. at 389, 26 S.Ct. at 80; see also *Buller v. Gordon Heirs*, 29 Pub. Lands Dec. 325, 326– 27 (1899) (holding that where widower dies leaving only minor children fee to land vests in said minors irrespective of any state law). Plaintiffs focus their argument on the special treatment orphans receive under the Act, specifically section 2292 of the Revised Statutes, and argue that the United States incurred an obligation either to issue a patent to Georga or to ensure that the homestead property was sold for Georga's benefit within two years after Sarah's death. Defendant contends that section 2292 is inapplicable. The issue is one of timing: Does section 2292 apply although a parent has filed final proof under the Homestead Act? Plaintiffs respond in the affirmative and assert that section 2292 is applicable until the patent is issued. Defendant responds that once final homestead proof is filed, the provision is inapplicable.[3]

The Supreme Court interpreted section 2292 in *Bernier*, 147 U.S. 242, 13 S.Ct. 244, 37 L.Ed. 152. Edward Bernier, a widower, made a homestead entry in 1875, but died in 1876 prior to perfecting his entry. He left five adult and five minor children surviving him. Samuel F. Bernier, an adult son, "on behalf of all the 10 heirs, made the required proof for commuting the homestead entry, paid the minimum price for the land, and received a certificate entitling him to a patent therefor." *Id.* at 243, 13 S.Ct. at 244. No one contested the certificate. Nevertheless, one year later a second certificate was issued to the minor heirs of Edward Bernier, "which was made upon the commutation proofs presented by Samuel F. Bernier," and a patent was issued to them. *Id.* The Court was asked to determine the rights of the adult and minor children of Edward Bernier

---

**3.** At argument plaintiffs advanced the position that section 2292 and section 2291, taken together, grant Georga a beneficial interest. This argument is addressed *infra* at pp. 684–85.

and to compel the conveyance from the minor heirs and the successor-in-title defendant, who had acquired an interest from one of the minor heirs, of an undivided half of the premises to the adult heirs.

The Supreme Court analyzed the policies surrounding sections 2291 and 2292 of the Revised Statutes. Specifically, the Court determined that section 2291 provided "that the certificate and patent, in case of the death of father and mother, shall, upon the proofs required being made, be issued to the heirs of the deceased party making the entry,—a provision which embraces children that are minors, as well as adults." 147 U.S. at 246, 13 S.Ct. at 245. However,

> [s]ection 2292 was, in our judgment, only intended to give to infant children the benefit of the homestead entry, and to relieve them, because of their infancy, from the necessity of proving the conditions required when there are only adults, or adults and minors, mentioned in the previous section [2291], and to allow a sale of land within a prescribed period for their benefit.

*Id.* at 247, 13 S.Ct. at 246. Under section 2292, "[t]he fact of their being infant children, and the death of their parents, is all that is required to establish their right and title to the premises, and to a patent." *Id.* The Supreme Court held therefore that section 2291 was broader than section 2292, but did not address the timing issue present in the instant case. Rather, the Court solely construed the two provisions and determined that, when a parent dies leaving both adult and minor children, section 2291 is applicable. Thus, in *Bernier*

> the right to the premises in controversy, covered by the homestead entry, vested in all the heirs ... at [the parent's] death,— the adult as well as the minor heirs,—and that the subsequent patent issued to the latter should have been issued to them all jointly, or a separate patent should have been issued for an undivided [equal share] to each heir. ... This is in conformity with the well-settled law that where a patent for land is issued, by mistake, inadvertence, or other cause, to parties not entitled to it, they will be declared trustees of

the true owner, and decreed to convey the title to him.

*Id.* (citing *Stark v. Starrs,* 73 U.S. (6 Wall.) 402, 18 L.Ed. 925 (1868)). As such, the Court determined that the minor heirs and successor-in-title defendant "should ... be required to execute proper conveyances to the complainants, so as to transfer to them an undivided half interest in the whole, or to each complainant an undivided tenth interest in such lands," 147 U.S. at 247, 13 S.Ct. at 246, because the minor heirs and successor-in-title defendant held title by mistake, and, therefore, were trustees of the land for the benefit of the true owners, the adult and minor children and the successor-in-title defendant.

In the instant case, plaintiffs interpret *Bernier* as recognizing a beneficial trust relationship between the United States and plaintiffs as Georga's heirs. The Supreme Court in *Bernier* did not hold that the United States became a trustee, but, rather, that the party to whom title was transferred by mistake or inadvertence became the trustee. Plaintiffs recognize this distinction, but argue that "[b]ecause the patent was never delivered or recorded, the government continues to hold title to the Property by mistake, and under an obligation of trust to Georga's heirs." Plfs' Br. filed Jan. 30, 1997, at 16. In support of this contention, plaintiffs rely on *Brown v. Hitchcock,* 173 U.S. 473, 476, 19 S.Ct. 485, 486, 43 L.Ed. 772 (1899).

*Brown* involved a transfer of lands under the swamp-land act. A state selected swamp lands under the act and subsequently sold the lands to Brown. The selection was approved by the Secretary of the Department of the Interior, but, before a patent issued, the Secretary revoked the approval and canceled the selection. The issue before the Supreme Court was whether questions of right to land in which the legal title remained in the Government should be solved by appeal to the land department or the courts. The Court determined that the land department was the proper avenue of appeal. However, "until the legal title to public land passes from the government, inquiry as to all equitable rights comes within the cognizance of the land department." *Id.* at 476, 19 S.Ct.

at 486. Thus, while the departments have exclusive power to determine all questions of equitable right or title, courts can resolve questions of entitlement once legal title has passed from the United States.

The Supreme Court held that "[u]nder the swamp-land act, legal title passes only on delivery of the patent." *Id.* at 476, 19 S.Ct. at 486. As a patent never issued, legal title did not pass. "Whatever equitable rights or title may have vested in the state, the legal title remained in the United States." *Id.* By making a lawful entry and payment under the swamp-land act, the

> "purchaser secures a vested interest in the property, and a right to a patent therefor, and can no more be deprived of it by order of the commissioner than he can be deprived by such order of any other lawfully acquired property. Any attempted deprivation in that way of such interest will be corrected whenever the matter is presented so that the judiciary can act upon it."

*Id.* at 478, 19 S.Ct. at 487 (quoting *Cornelius v. Kessel,* 128 U.S. 456, 461, 9 S.Ct. 122, 124, 32 L.Ed. 482 (1888)). The Court determined that the individuals' equitable rights created a trust relationship, and stated:

> "The government holds the legal title in trust for [the purchaser], and he may not be dispossessed of his equitable rights without due process of law. Due process in such case implies notice and a hearing. But this does not require that the hearing must be in the courts, or forbid an inquiry and determination in the land department."

*Id.* (quoting *Orchard v. Alexander,* 157 U.S. 372, 383, 15 S.Ct. 635, 639, 39 L.Ed. 737 (1895)).

Plaintiffs in the instant case recognize that Sarah McAlister applied for a patent under section 2291. She perfected her claim and filed her final homestead proof. When she died prior to the patent's issuance, plaintiffs assert that Georga was entitled to the land as a minor child under section 2292. Thus, according to plaintiffs, Georga became the equitable owner of the land and was entitled to the "right and fee." *See* Revised Statutes § 2292. Under these circumstances Georga held equitable title under the Homestead Act

and the United States held legal title, so that the United States held the land in trust for Georga's benefit.

Defendant agrees with plaintiffs' assertions, but would substitute Sarah for Georgia as an equitable title holder. Defendant states that Sarah made her final proof and received a final certificate, evidencing her entitlement to a patent.

> [W]hen a homesteader ... has, in good faith, performed all the acts which, under the provisions of the statutes of the United States, are necessary to complete his right to the land, then he becomes, equitably, the owner of the same, and the United States holds the naked legal title as a trustee for his benefit.

*United States v. Steenerson,* 50 F. 504, 507 (8th Cir.1892). Thus, when Sarah McAlister filed her final proof, she became the equitable owner of the property, and the United States held legal title as trustee for her benefit. At this point Sarah had complied with all of the terms and conditions entitling her to a patent for the property and acquired a vested interest in the property. *See Wirth v. Branson,* 98 U.S. 118, 25 L.Ed. 86 (1878); *Shepley v. Cowan,* 91 U.S. 330, 23 L.Ed. 424 (1875); *Stark,* 73 U.S. (6 Wall.) 402, 18 L.Ed. 925; *Steenerson,* 50 F. at 507–08.

> Where the right to a patent has once become vested ..., it is equivalent, so far as the government is concerned, to a patent actually issued. The execution and delivery of the patent after the right to it has become complete are the mere ministerial acts of the officers charged with that duty.

*Simmons v. Wagner,* 101 U.S. 260, 261, 25 L.Ed. 910 (1879). When Sarah's right became vested, the lands "[we]re segregated from the public domain, [we]re no longer subject to entry, and the vested right to the patent thereto [wa]s equivalent to a patent actually issued." *Steenerson,* 50 F. at 507. On this basis, defendant contends that, because Sarah had a vested property interest and was the equitable owner of the property, the rights of Georga were altered, such that, when Sarah died, Georga had rights to the property under state inheritance laws, not the Homestead Act. In support of this propo-

sition, defendant cites *Doran v. Kennedy*, 237 U.S. 362, 35 S.Ct. 615, 59 L.Ed. 996 (1915).

In *Doran* the entryman died after making his final proof of homestead claim, but before the patent issued. The patent subsequently issued in the entryman's name, and the property was sold by the administrator of the entryman's estate. Plaintiff, the entryman's next of kin, contested inclusion of the homestead property in the entryman's estate and contended that plaintiff was a direct beneficiary under section 2291 of the Revised Statutes. The Supreme Court rejected plaintiff's contention, stating that section 2291 "provides for cases where the homesteader dies before final proof, other sections applying when such proof has been made and nothing is yet to be performed to entitle to a patent." *Id.* at 366, 35 S.Ct. at 616. Specifically, the Court cited section 2448, which provides that

> Where patents for public lands have been or may be issued, in pursuance of any law of the United States, to a person who had died, or who hereafter dies, before the date of such patent, the title to the land designated therein shall inure to and become vested in the heirs, devisees, or assignees of such deceased patentee as if the patent had issued to the deceased person during life.

Revised Statutes § 2448 (1875). The Court determined that under the provisions, once final homestead proof was made, the individual making such proof "became the equitable owner of the land. Indeed, it practically became his absolute property, subject to his disposition by assignment or by will, or to the disposition of the law ..., and subject, therefore, upon his death, to the probate jurisdiction of the state." *Id.* at 367, 35 S.Ct. at 617; *see Strain v. Hostotlas*, 17 Pub. Lands Dec. 293, 294 (1893) (finding that when equitable title vests, title "descends to her heirs upon her death according to the laws of her domicil"); *Anna Anderson*, 26 Pub. Lands Dec. 242, 243 (1898) (stating that once person becomes entitled to patent, section 2448 applies).

Defendant posits that, under *Doran*, Sarah McAlister, as equitable owner, had a vested property interest which was subject to disposition "by assignment or by will, or to ...

disposition of the law." Consequently, "upon [Sarah's] death said property passed to her heirs, not under the provision of the Homestead Act relied upon by plaintiffs, but under the probate laws of the state in which she resided." Def's Br. filed Dec. 6, 1996, at 19.

Plaintiffs counter that the present case is distinguishable from *Doran* because 1) "Section 2448 does not authorize issuance of a patent in the name of a dead person," and 2) that *Doran* involved an adult heir and that the adult heir sat idle while a probate court confirmed the sale of the homestead property. Plfs' Br. filed Jan. 30, 1997, at 16. Plaintiffs miss the point. First, although the patent in *Doran* was issued in the name of a deceased entryman, the Supreme Court explicitly found section 2448 applicable; the provision modifies the rule that "a conveyance to a deceased person is inoperative and void." *Eunice Zimmerman*, 27 Pub. Lands Dec. 671, 672 (1898). Plaintiffs' second contention essentially attempts to distinguish *Doran* by noting that Georga was a minor heir and that *Doran* involved an adult heir. Plaintiffs argue that, because a minor heir was involved in the instant case, section 2292 trumps the normal application of section 2448 and state inheritance laws.

Plaintiffs' reliance on section 2292 is misplaced. The Supreme Court pronounced that sections 2291 and 2292 must be read so as to "give effect to both sections; and it is a general rule, without exception, in construing statutes, that effect must be given to all their provisions, if such a construction is consistent with the general purposes of the act and the provisions are not necessarily conflicting." *Bernier*, 147 U.S. at 246, 13 S.Ct. at 245. In that light the Court explained that the policy behind section 2292 is to relieve minor children, "because of their infancy, from the necessity of proving the conditions required when there are only adults, or adults and minors...." *Id.* at 247, 13 S.Ct. at 246. Thus, the statute eliminated the necessity of a minor to furnish proof. *Heirs of Frederick C. DeLong*, 36 Pub. Lands Dec. 332, 333 (1908) ("The manifest purpose of this section is to permit the minor heir of a deceased homesteader to reap the full benefits of the ancestor's entry without compelling him to

further comply with the requirements of the homestead law as to residence and cultivation."). Minor children falling within this provision are entitled to the patent only upon a showing of "compliance with the law on the part of the entryman up to the time of decease, the death of both parents, and the fact of minority." *Curran v. Williams' Heirs*, 20 Pub. Lands Dec. 109, 110 (1895); *see Rooney v. Bourke's Heirs*, 27 Pub. Lands Dec. 596, 596 (1898) (finding minor heirs entitled to "patent upon submission of final proof in regular form showing compliance with the law by the entryman and the death of both parents"). The minor children are not entitled to perfect the claim, but to the immediate vesting of the right and fee. *See Curran v. Williams' Heirs*, 26 Pub. Lands Dec. 259 (1898).

In the case at bar, however, the vesting of the right and fee occurred when Sarah made her final homestead proof. As a result, Georga's rights to the land under patent were an issue for state law and did not arise under the Homestead Act.

The Department of the Interior (the "Department") previously addressed this situation and has chosen not to apply section 2292 in at least two cases. *See Clara Huls*, 9 Pub. Lands Dec. 401, 402 (1889) ("Section 2292 ... provides, that the right and fee to land covered by a homestead entry shall inure to the infant child of the homesteader, when both parents of such child die before final proof."); *Strain*, 17 Pub. Lands Dec. at 294 (finding that section 2292 is inapplicable after final proof is made).

In *Clara Huls* Florence J. Miller made a homestead entry, married, and died prior to the perfection of the homestead claim, leaving a minor child, Job Wilbur Huls. Her husband, James H. Huls, made final proof, but died prior to patent issuance. After perfecting the claim, but prior to the patent's issuance, James Huls married Clara Huls. The Department held that section 2292 was inapplicable as "the entry was completed by the infant's father, before the latter's death." *Clara Huls*, 9 Pub. Lands Dec. at 402. It stated: "Section 2292 ... provides, that the right and fee to land covered by a homestead entry shall inure to the infant child of the homesteader, when both parents of such child die before *final proof.*" *Id.* at 402 (emphasis added). Consequently, the Department explained that the "homesteader's husband, by making final proof as aforesaid, acquired upon the issue of the final certificate a vested interest in the land, as an heir of his deceased wife." *Id.* As such, the case involved a matter of inheritance which should be determined by the courts under state inheritance laws.

The Department faced a similar situation in *Strain*. A widow submitted final homestead proof showing full compliance with the law and subsequently died prior to the patent's issuance. The Department found that she made final homestead proof and that equitable title therefore vested in her, notwithstanding that the final certificate or patent had not been issued to her. The Department concluded: "The equitable title having vested in her on January 26, 1891, date of approval of her final proof, it descends to her heirs upon her death, according to the law of her domicil." *Strain*, 17 Pub. Lands Dec. at 294.

Applying these holdings to the instant case, Sarah submitted final proof and equitable title vested in her on the date of her submission. Upon her death the rights of her heirs in the property were fixed by state law, not by nature of the Homestead Act. Thus, under section 2292 a trust relationship did not arise between the United States and Georga.

Alternatively, plaintiffs contend that sections 2292 and 2448 must be read conjunctively and that, under these provisions, Georga had a "protectable right to an interest." Transcript of Proceedings, *Ruth v. United States*, No. 96–286L (Fed. Cl. Feb. 21, 1997, at 37 (hereinafter "Tr.")). The extent of this interest, however, is uncertain. During argument, it was revealed that Georga had older adult siblings. As a consequence, under sections 2291 and 2292 of the Revised Statutes, Georga was entitled to, at most, a *pro rata* share in the homestead property. *See Bernier*, 147 U.S. at 247, 13 S.Ct. at 246. Nevertheless, final proof having been made, Georga and her siblings were entitled to Sarah's estate as provided by state law, not

the Act. *See Strain,* 17 Pub. Lands Dec. at 294 (holding that heirs of widow who submitted final proof held equitable title, not heirs of entryman). Once again, plaintiffs fail to establish a protected interest under federal law.

### 2. *Schurz and Detroit Timber: trust and statute of limitations*

Plaintiffs advance a third argument which essentially has two components: 1) Plaintiffs contend that the patent for the property was not recorded in the local tract book and as such Georga was never given meaningful notice of her rights; and 2) the failure to record or deliver the patent to Georga resulted in a continuing duty of implied trust on the United States to ensure proper delivery. *See* Tr. at 37, 42. Plaintiffs rely on *United States v. Schurz,* 102 U.S. 378, 26 L.Ed. 167 (1880), and *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 26 S.Ct. 282, 50 L.Ed. 499 (1906), in which the Supreme Court discussed patents, their issuance, and their effect on transferring title from the United States.

#### 1) *When does a patent issue?*

■ Only a patent "passes the legal title, and ... until it is issued the legal title remains with the government." *Detroit Timber,* 200 U.S. at 338, 26 S.Ct. at 288. The "patent from the United States operates to transfer title, not merely from the date of the patent, but from the inception of the equitable rights upon which it is based." *Id.* at 334–35, 26 S.Ct. at 286.[4]

In *Schurz* the Supreme Court held:

[T]hat when, upon decision of the proper office that the citizen has become entitled to a patent for a portion of the public lands, such a patent made out in that office is signed by the President, sealed with the seal of the General Land–Office, countersigned by the recorder of the land-office, and duly recorded in the record-book kept for that purpose, it becomes a solemn public act of the government of the United

States, and needs no further delivery or other authentications to make it perfect and valid. In such case the title to the land conveyed passes by matter of record to the grantee, and the delivery which is required when a deed is made by a private individual is not necessary to give effect to the granting clause of the instrument.

102 U.S. at 397. Once a patent is signed, sealed, counter-signed, and recorded, all legal monuments of title belong to the patentee, not the United States. *Id.* "Whenever this takes place the land has ceased to be the land of the government; or, to speak in technical language, the legal title has passed from the government, and the power of these officers to deal with it has also passed away." *Id.* Absolutely no requirement is placed upon the Government to constructively or actually deliver a copy of the patent to the patentee. *Id.* at 396–97.

The acts of Congress provide for the record of all patents for land in an office, and in books kept for that purpose. An officer, called the Recorder, is appointed to make and to keep these records. This officer is required to record every patent before it is issued, and to countersign the instrument to be delivered to the grantee. This, then is the final record of the transaction, the legally appointed act which completes what Sir William Blackstone calls title by record; and when this is done, the grantee is invested with that title.

*Id.* at 403; *see Simmons,* 101 U.S. at 261.

Plaintiffs do not dispute that "[a] patent for the Property purportedly issued in Washington, DC on December 30, 1882, three years after Sarah McAlister's death." Plfs' Separate Statement of Undisputed Facts filed Jan. 30, 1997, at 2.[5] Rather, plaintiffs contend that the patent in the present case was incorrectly reported. According to plaintiffs, in order to give Georga meaningful notice of her rights in the homestead property, the United States was required to record the patent in the local tract book in Darda-

4. This is the "doctrine of relation." *See Detroit Timber,* 200 U.S. at 334, 26 S.Ct. at 286.

5. A different result is not mandated if tile patent never issued in the case at bar because the right

to a patent once vested is equivalent to a patent actually issued. *See Detroit Timber,* 200 U.S. at 335, 26 S.Ct. at 286; *Simmons,* 101 U.S. at 261.

nelle, Arkansas. Plaintiffs' argument, although seemingly persuasive, ignores the policy perfecting the rights of the patent-holder at the earliest possible time and the facts involved in *Schurz*.

In *Schurz* the patent at issue was signed, sealed, and recorded and sent to the register of the land office in Salt Lake City for delivery to him. It was never delivered and always remained under the control of the officers of the United States. The Court determined that title transferred regardless of the failure to deliver the patent, so long as the other requirements were met. The instrument was signed by the President, had a seal of the United States affixed to it, was countersigned by the recorder, and was "recorded in the record book kept for that purpose." *Schurz*, 102 U.S. at 397. The Court did not require the patent to be sent to the local land office or that it be recorded in the local land office. Indeed, "[t]he patent, in the meaning of the act referred to, *is granted to the patentee from its date, though he may never actually receive it*, and is valid and effectual to pass the legal title to the land." *Id.* at 400 (quoting *In re Pierce Mutelie*, 3 Op. Att'y Gen. 654 (1841)). "The fact that the evidence of this transfer of title remains in the possession of the land-officers cannot restore the title to the United States or defeat that of the grantee, any more than the burning up of a man's title-deeds destroys his title." 102 U.S. at 402. The case did not turn on whether the patent was recorded in Salt Lake City (the local land office) or the national patent book.

Plaintiffs insist that Georga as a minor could not have known her rights in the homestead property under sections 2448 and/or 2292 unless the patent was recorded in the local tract book or delivered to her in person. However, the Supreme Court stated:

> But we may well consider that in all Nations, as far as we know, where grants of the property of the government or of the Crown are made by written instruments,

provision is made for a record of these instruments in some public government office. Our experience in regard to Mexican, Spanish, and French grants of parts of the public domain purchased by us from those governments, teaches us that such is the uniform law of those countries.

*Schurz*, 102 U.S. at 402–03. Therefore, once the patent is recorded in the national patent book, nothing further is required to perfect the patentee's title. Plaintiffs make much of the "circulars and instructions" governing the delivery of patents. These rules represent the mere ministerial acts contemplated by the Supreme Court in *Schurz* and *Detroit Timber*. *See Schurz*, 102 U.S. at 403; *Detroit Timber*, 200 U.S. at 335. They encompass the remaining "duty, simply ministerial, to deliver the patent to the owner; a duty which, within all the definitions, can be enforced by the writ of *mandamus*." *Schurz*, 102 U.S. at 403.[6]

In the present case, the patent was issued on December 30, 1882, signed by the President, and countersigned by the Recorder of the General Land Office. It was then recorded in the national patent book. As of the date of recordation an action for *mandamus* could lie; in effect, the United States lost legal title.

This case is complicated by the fact that the patent issued after Sarah's death, so that title to the land descended to her heirs as defined by state law. This result is codified by section 2448 of the Revised Statutes. According to plaintiffs, anytime a minor orphan is involved, the United States would be obligated to provide actual delivery of the patent or required to record the patent multiple times in contravention to the delivery found satisfactory by the *Schurz* court. Plaintiffs would grant Georga priority over Sarah under sections 2292 and 2248 as Georga was a minor. The Supreme Court expressly has rejected such an approach. *Se McCune*, 199

---

6. Additionally, the court notes that the "circulars and instructions" relate to the delivery of patents, not the recordation requirement discussed in *Schurz*. *See* Plfs' Br. filed Jan. 30, 1997, at 9 ("The Circulars and Instructions governing the delivery of patents under the Homestead Act."):

Decl. of Forrest A. Hainline III filed Jan. 30, 1997, Ex 3 ("Upon receipt of official notice of delivery of a patent by this office you will make note on your tract books accordingly in the manner indicated.").

U.S. at 382, 26 S.Ct. at 78 (refusing to allow minor's claim to supersede widowed adults).

Plaintiffs' argument fails for an additional reason. Georga's rights are determined by section 2448 and, arguably, 2292. Neither one of these provisions calls for the United States to undertake an affirmative obligation to give notice of possible homestead rights once a homesteader dies after submitting final proof. Section 2448 speaks of this specific circumstance, but does not place any obligations on the United States to deliver a patent to a decedent homesteader's heirs. The section only provides, in essence, that a patent issued to a deceased homesteader after submission of final proof is tantamount to a patent issued to the homesteader's heirs, devisees, and assignees. In this manner title is transferred to the homesteader as early as possible, and the marketability of title is enhanced. Plaintiffs' argument must be rejected.

### 2) *Statute of limitations*

■ Plaintiffs also rely on *Schurz* and *Detroit Timber* to argue that their action is not time-barred. A cause of action against the United States, whether it be for breach of contract or breach of trust, accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of its existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988). "[T]he statute of limitations 'does not run against a beneficiary in favor of a trustee until the trust is repudiated and the fiduciary relationship is terminated.'" *Id.* at 1578 (citing *Manchester Band of Pomo Indians, Inc. v. United States*, 363 F.Supp. 1238, 1249 (N.D.Cal.1973)); *accord United States v. Taylor*, 104 U.S. 216, 17 Ct.Cl. 427, 26 L.Ed. 721 (1881).

Under the Supreme Court cases discussed above, legal title is transferred at its earliest possible moment. The Court focuses its analysis on the date of patent issue, because on that date title is perfected. *Schurz,* 102 U.S. at 395–96. Once title is perfected, "[i]f the realtor was entitled to possession of the patent as his property, and it was the plain duty of the Secretary to deliver it to him when demanded, then, under all authorities, and especially the decisions of this court, he is entitled to the remedy he asks." *Id.* at 394–95. The patent in the instant case issued over 100 years ago. As discussed in section 2(1) of this opinion, Georga was not entitled to delivery or to have the patent recorded in the local tract book. Consequently, plaintiffs' breach of implied-in-fact trust claim accrued over 100 years ago.

■ Plaintiffs attempt to circumvent the six-year statute of limitations by arguing that the Government engaged in some type of fraudulent conduct. This fraud allegedly was perpetrated during the 1988–1991 time period. Plaintiffs do not allege any fraudulent governmental conduct between Sarah's death in 1879 and the alleged fraudulent conduct in 1988. Thus, the court agrees with defendant, "if we assume some wrongdoing by the government between 1988 and 1991 (which defendant vigorously denies), such wrongdoing does not and cannot be used by plaintiffs to reach back over 100 years to toll the statute of limitations in this case and preserve their breach of implied contract of trust claim." Def's Br. filed Feb. 10, 1997, at 7.[7] Plaintiffs' complaint must be dismissed for lack of subject matter jurisdiction due to the bar of the statute of limitations.

### 3. *Mitchell* and income-producing trusts

■ Assuming a trust relationship exists, in order to invoke the court's jurisdiction, plaintiffs must demonstrate that an "applicable source of substantial law 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" *Brown v. United States*, 86 F.3d 1554, 1559 (Fed.Cir.1996) (quoting *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976) (inter-

---

7. Plaintiffs contend that the statute of limitations does not bar their claim for six years' rent. Plfs' Br. filed Jan. 30, 1997. at 11. Such a claim is conditioned upon the existence of a trust and the application of the continuing claim doctrine. *See Cherokee Nation of Oklahoma v. United States*, 26 Cl.Ct. 798, 803–04 (1992). Having determined that a trust relationship between plaintiffs and the United States does not exist, plaintiffs' claim for six years rent must also be dismissed.

nal quotations and citation omitted)). The source of substantive law "may grant the right to recovery either 'expressly or by implication.'" *Id.* (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967)). These principles have been applied to breach of trust claims. *See United States v. Mitchell*, 463 U.S. 206, 216–19, 103 S.Ct. 2961, 2967–69, 77 L.Ed.2d 580 (1983) (*Mitchell II* ); *Brown*, 86 F.3d at 1557.

In *Mitchell II* the Supreme Court held that an action for damages may be maintained in the Court of Federal Claims for breach of a trust arrangement, but only in cases where the governing statutes and regulations are so detailed that they implicitly require compensation. 463 U.S. at 211, 103 S.Ct. at 2964–65; *see White Mtn. Apache Tribe of Arizona v. United States*, 20 Cl.Ct. 371, 383 (1990). The Supreme Court held that a fiduciary relationship can arise based on the Government's elaborate control in maintaining the trust corpus. *Mitchell II*, 463 U.S. at 210–11, 222–26, 103 S.Ct. at 2964–65, 2970–73. The Court reasoned that in such cases, the

> recognition of a damages remedy ... furthers the purposes of the statutes and regulations, which clearly require that the Secretary manage Indian resources so as to generate proceeds for the Indians. It would be anomalous to conclude that these enactments create a right to the value of certain resources when the Secretary lives up to his duties, but no right to the value of the resources if the Secretary's duties are not performed. "Absent a retrospective damages remedy, there would be little to deter federal officials from violating their trust duties, at least until the allottees managed to obtain a judicial decree against future breaches of trust." *United States v. Mitchell*, 445 U.S. [535,] 550 [100 S.Ct. 1349, 1357, 63 L.Ed.2d 607 (1980) (*Mitchell I* ) ] (White, J. dissenting).

463 U.S. at 226–27, 103 S.Ct. at 2973. The question in the instant case is whether the Homestead Act parallels the comprehensive system of regulations governing the management of timber resources at issue in the *Mitchell II* case.

Plaintiffs contend that under *Mitchell II*, "[w]here a statute gives the federal government responsibility to oversee land for a beneficiary, and to assure that profits realized from the land inure to the benefit of the beneficiary, a trust relationship exists, recovery for breach of which may be had under the Tucker Act." Plfs' Br. filed Jan. 30, 1997, at 7. Defendant rejoins that the Homestead Act does not mandate compensation for violations of the Act in the same manner as the regulations and statute at issue in *Mitchell II*. Plaintiffs are only partially correct.

The standard for determining whether a statute imposes fiduciary duties involves the following:

> "[W]here the Federal Government takes on or has control or supervision over ... monies or properties, the fiduciary relationship normally exists with respect to such monies or properties ... even though nothing is said expressly in the authorizing or underlying statute (or other fundamental document) about a trust fund, or a trust or fiduciary connection."

*Mitchell II*, 463 U.S. at 225, 103 S.Ct. at 2972 (quoting *Navajo Tribe of Indians v. United States*, 224 Ct.Cl. 171, 183, 624 F.2d 981, 987 (1980)): *see Brown*, 86 F.3d at 1560. "According to this distinctive 'control or supervision' test, nearly complete government management ... or control, while more than sufficient to create an enforceable fiduciary duty, is not necessary." *Brown*, 86 F.3d at 1560; *see White Mtn. Apache Tribe of Arizona v. United States*, 11 Cl.Ct. 614, 628 (1987), *aff'd*, 5 F.3d 1506 (Fed.Cir.1993) (Table).

No other court examining the *Mitchell II* "control or supervision" test has faced the issue before this court, *i.e.*, whether the Homestead Act gives rise to a fiduciary trust obligation on the part of the United States. In fact, most of the other cases discussing the *Mitchell II* requirements do so only in the setting of leasing Indian lands or the sale of timber or mineral on Indian lands. *See, e.g., Mitchell II*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (analyzing trust *corpus* which constituted Indian timber, lands, and funds); *Brown*, 86 F.3d at 1554 (involving leasing of Indian land); *Pawnee v. United States*, 830

F.2d 187 (Fed.Cir.1987) (involving mineral rights on Indian land).

Unlike the regulations at issue in the prior cases, the Homestead Act does not mandate the governmental supervision or control described in *Mitchell II* and *Brown.* In *Mitchell II* the Government decided to sell timber based on the consideration of " 'the needs and best interests of the ... owner and his heirs' and that proceeds from such sales be paid to owners or disposed of for their benefit." *Mitchell II,* 463 U.S. at 224, 103 S.Ct. at 2972 (quoting 25 U.S.C. § 406(a)). Under the Homestead Act, however, the United States issues a patent to an individual who has furnished final homestead proof. If the person dies prior to receipt of the patent, section 2448 applies and the title to the homestead property "inure[s] to and become[s] vested in the heirs, devisees or assignees of such deceased patentee as if the patent had issued to the deceased person during life." *Doran,* 237 U.S. at 366, 35 S.Ct. at 617 (quoting Revised Statutes § 2448). Once the final homestead proof is made, equitable title is transferred, and the land "practically" becomes the landowner's "absolute property." *Id.* at 367, 35 S.Ct. at 617; *see Detroit Timber,* 200 U.S. at 335, 26 S.Ct. at 286 (quoting *Simmons,* 101 U.S. at 261). The landowner can lease the land, assign it, and devise it without governmental approval. *See Doran,* 237 U.S. at 367, 35 S.Ct. at 617; *Strain,* 17 Pub. Lands Dec. at 294. Thus, the United States does not "control or supervise" the homestead property in any income-producing manner. *Cf. Mitchell II,* 463 U.S. at 225, 103 S.Ct. at 2972 (finding income-producing trust where Government had comprehensive control over harvesting of Indian timber); *Brown,* 86 F.3d at 1563 ("Given the fact of the Secretary's control over the entry into, substantive terms and form of, and exit from all commercial leases on allotted lands, we can only conclude that the Secretary acts as a fiduciary with respect to leases granted...."); *Pawnee,* 830 F.2d at

189 ("This statute places the Secretary ... at the center of the leasing of Indian mineral lands.") [8]

Plaintiffs further argue that section 2292 imposes a type of fiduciary obligation contemplated by *Mitchell II.* Specifically, plaintiffs cite the provision stating that the land of orphaned minor children may be sold "for the benefit of such infants, but for no other purpose." Revised Statutes § 2292. The Government, however, is not the seller of the land. Rather, "the executor, administrator, or guardian may" make the sale. *Id.* It is the estate's executor who administers the property for the minor's benefit. The estate's executor controls and supervises the homestead property, not the Government. Because the United States does not exercise any supervision or control over the homestead property that constitutes the trust *corpus,* the suit must be dismissed for lack of subject matter jurisdiction. *See Mitchell I,* 445 U.S. at 542, 100 S.Ct. at 1353–54 (dismissing claim for lack of subject matter jurisdiction where statute in question "created only a limited trust relationship" and failed to impose affirmative duty on Government).

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion for summary judgment is granted. The Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.

---

**8.** Such a finding is consistent with the Supreme Court's analysis in *Schurz.* where the Court held: If the relator in this case cannot obtain his patent, he is wholly without remedy. He cannot sue the United States, in whom is the title in the absence of the patent; for the United States can be sued in no other court than the Court of Claims, and we have decided that that court has no jurisdiction in such a case. 102 U.S. at 403 (citing *Bonner v. United States,* 76 U.S. (9 Wall.) 156, 19 L.Ed. 666 (1869)).